**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JWL ENTERTAINMENT GROUP, INC., *et al.,*

      Appellants,

v.

SOLBY+WESTBRAE PARTNERS, *et al.,*

      Appellees.

_____/

In re:
FISHER ISLAND INVESTMENTS, INC.,

      Alleged Debtor.

_____/

In re:
LITTLE REST TWELVE, INC.,

      Alleged Debtor.

_____/

**Case No. 12-cv-20939-KMW**
**(Consolidated)**

Appeals from USBC-Miami

U.S. Bankruptcy Court No. 11-17047-AJC
Chapter 11 (Involuntary)

U.S. Bankruptcy Court No. 11-17061-AJC
Chapter 11 (Involuntary)

**FISHER ISLAND INVESTMENTS, INC.'S AND LITTLE REST TWELVE, INC.'S
MOTION TO DISMISS JWL ENTERTAINMENT GROUP, INC.'S AND AREAL
GROUP'S APPEALS BASED ON LACK OF STANDING**

Appellees and Alleged Debtors, Fisher Island Investments, Inc. ("***FII***") and Little Rest

Twelve, Inc. ("***LR12***"), by and through undersigned counsel Patricia A. Redmond, Esq., Joseph

L. Rebak, Esq. and Martin P. Russo, Esq., (as defined below the "***Redmond Group***") and

pursuant to Rule 8011, Fed. R. Bankr. P., and S.D. Fla. L.R. 7.1, move to dismiss the appeals

filed by JWL Entertainment Group, Inc. ("***JWL***") and Areal Group ("***Areal***") from the

Memorandum Opinion Granting Summary Judgment (the "***Judgment***") entered by the

Honorable A. Jay Cristol, United States Bankruptcy Judge for the Southern District of Florida,

based on lack of standing, and as grounds therefor state as follows.

I.    **INTRODUCTION AND BACKGROUND.**

A.  **The Parties and the Dispute.**

The bankruptcy proceedings from which these appeals arise is the most recent chapter in a contest for ownership and control of certain assets, among them FII and LR12, which arose following the death of a wealthy Georgian named Arkadi "Badri" Patarkatsishvili ("*Badri*") in February, 2008.  On one side of this contest, trustees for a Gibraltar trust named Valmore (the "*Valmore Trust*") have consistently claimed that FII and LR12 (among other assets) are owned by the Valmore Trust, which, as the Gibraltar court later found (and is further discussed below), was created while Badri lived and was populated with various of his holdings for the benefit of his immediate family.    In opposition, Joseph Kay, Badri's distant relative and sometime employee, claimed initially that the Valmore Trust (which Kay also argued included FII and LR12) was settled by Kay for his and his family's benefit.  After the Gibraltar Court found that he had  no interest in the Valmore Trust, Kay, in conjunction with members of his family and attorney Emanuel Zeltser, claimed that FII and LR12 were actually owned by or transferred to an alleged unincorporated partnership named Imedinvest, ("*Imedinvest*") in which Kay is (and, allegedly, Badri was) a partner.  This latter claim has been at issue in various state court proceedings and is the central argument advocated by Zeltser and his co-counsel in the proceedings below.  The Zeltser Group has argued in submissions in the Bankruptcy Court that Areal is a partner of Imedinvest. [Bk. Case No. 11-17047-AJC ECF No. 428 at Exhibit 19]**.**[1]

---

[1] For ease of reference, with respect to the prior record in these cases, the undersigned will cite to the record for Bk. Case No. 11-17047, but parallel citations are available for Bk. Case No. 11-17061.  By quoting or citing to the submissions of the Zeltser Group, the undersigned does not admit that any of the allegations in those statements or documents are true – in fact the undersigned believes that all submissions by the Zeltser Group and the Petitioning Creditors in these actions are, as the court stated, "disingenuous at best."

Shortly after Badri's death, an action was brought by the Valmore trustee in the Gibraltar court, the situs of the Valmore Trust. The trustee's purpose in bringing this action was to obtain a clear ruling as to who held the beneficial interest in the Valmore Trust. In the Gibraltar proceeding, Badri's immediate family argued that they were the proper beneficiaries of the Valmore Trust while Joseph Kay, then a director of FII, argued the he created the Valmore Trust for the benefit of his family. The parties acknowledged during that proceeding that the Valmore Trust owned Fisher Island Limited ("**FIL**") and Grosvenor Trading House Limited ("**GTHL**") which in turn owned FII and LR12 respectively. Simply stated, this chain of corporate ownership was never in question during the Gibraltar proceeding. Kay's claims in Gibraltar did not contest the structure and content of the Valmore Trust, but rather addressed only his beneficial interest in the Trust.

The Gibraltar proceeding culminated in the entry of two judgments, one in December 2009 and one in February 2010, in which the Gibraltar Court determined that the proper settlor and beneficiaries of the Valmore Trust were, respectively, Badri and his immediate family, and that neither Joseph Kay nor any of his family had any interest in the Valmore Trust. The Gibraltar court's judgments are final and any opportunity for appeal has been exhausted.

Having decisively lost his bid in Gibraltar for ownership and control of the Valmore Trust assets, in particular FII and LR12, Kay and his lawyers launched a new theory that FII and LR12 are not assets of the Valmore Trust at all, rather that they are owned by Imedinvest, of which Kay is allegedly the managing partner and Areal is also an alleged partner. FIL and GTHL, which all parties agree own FII and LR12 respectively, were allegedly transferred to JWL, which was then allegedly transferred from the Valmore Trust to Imedinvest by the Trust's Protector, Fallon Invest & Trade, Inc. ("**Fallon**"). Claiming authority to do so under this new

theory, Zeltser appeared nominally for LR12 in proceedings in the Supreme Court of New York, New York County (the "*New York Proceeding*") to argue for Imedinvest's (and, thus, Kay's) ownership of LR12. Similarly, Zeltser's co-counsel, Darin DiBello, appeared nominally for FII in proceedings in the Circuit Court in and for Dade County, Florida (the "*Dade County Action*") to make similar arguments concerning ownership of FII. This post-Gibraltar Imedinvest ownership theory has been the basis claimed by Zeltser/DiBello for their appearance in the bankruptcy proceeding nominally for the alleged debtors, FII and LR12. It is no coincidence that Alexander Fishkin, the attorney alleging now to represent JWL in the instant appeals, was co-counsel with Zeltser in nominally representing LR12 in the New York Proceeding. Craig Pugatch, who represents the Petitioning Creditors (as defined below) that initiated the involuntary bankruptcies, now also purports to represent alleged Imedinvest partner, Areal, casting Pugatch as counsel on both the creditor and debtor sides of the bankruptcy contest.

The persons actually represented by Zeltser and his co-counsel, and these attorneys themselves, have been referred to throughout the bankruptcy proceedings as the "*Zeltser Group*." Mr. Pugatch has been aligned with the Petitioning Creditors, but for the purposes of this Motion to dismiss Areal's appeal, he must also be included within the Zeltser Group. The Zeltser Group has advocated throughout for Imedinvest's ownership and other interests and for the consequent interests of Imedinvest's alleged subsidiaries, including *inter alia* JWL, FIL, GTHL, FII and LR12. In this, they have been opposed by the Valmore Trust, claiming ownership of, *inter alia* FIL, GTHL, FII and LR12, and by the undersigned lawyers and their co-counsel engaged to represent these entities (the "*Redmond Group*")[2].

---

[2] The nomenclature "Redmond Group" and "Zeltser Group," evolved for ease of reference in the litigation pending in the Bankruptcy Court, where the two groups filed competing answers on

### B.  The Bankruptcy Proceedings Below.

While the New York Proceeding and the Dade County Action were moving towards judgment as to the proper representatives of FII and LR12, Involuntary Petitions in Bankruptcy were filed against FII and LR12 in the Southern District of Florida (the "***Bankruptcy Court***"). These petitions were filed on March 17, 2011 by a group of entities and individuals purporting to hold claims against each of the Alleged Debtors the Petitioning Creditors.[3] Three of these claims are based on an alleged promissory note.  On March 21, 2011, the Redmond Group entered appearances for FII and LR12 (Bk. Case No. 11-17047-AJC ECF No. 5; Bk. Case No. 11-17061-AJC ECF No. 6).  On that same day, the Zeltser Group, nominally acting for FII and LR12 under the post-Gibraltar Imedinvest ownership theory, answered the Involuntary Petitions on behalf of those companies, consenting to the relief requested. (Bk. Case No. 11-17047-AJC ECF No. 6; Bk. Case No. 11-17061-AJC ECF No. 5).  On March 22, 2011, the Redmond Group filed Emergency Motions to Strike the Involuntary Answers filed by the Zeltser Group.  (Bk. Case No. 11-17047-AJC ECF No. 11; Bk. Case No. 11-17061-AJC ECF No. 8).   The Redmond Group also filed Answers raising defenses and claims which evidence a good faith dispute regarding the Involuntary Petitions.  (Bk. Case No. 11-17047-AJC ECF No. 49; Bk. Case No. 11-17061-AJC ECF No. 39).

The Bankruptcy Court determined that it must first resolve who owns and controls FII and LR12 before it could address the issues with respect to the involuntary petitions. Both groups presented a framework of ultimate ownership for FII and LR12 and each has advocated throughout on behalf of all the various entities in the respective chain of ownership and control

behalf of the Alleged Debtors to each of the involuntary petitions filed by six creditors (the "***Petitioning Creditors***").

[3] These petitions were filed by Mr. Pugatch's firm on behalf of the Petitioning Creditors.

each group claims as to FII and LR12.  If the Redmond Group controls FII and LR12, then the Involuntary Chapter 11 Petitions would be contested – if the Zeltser Group controls FII and LR12, then the Petitions would be uncontested.

Resolution of the dispute as to who legitimately owns, controls, and represents FII and LR12 has been the primary element of the bankruptcy proceedings since the filing of the involuntary petitions  and has been the object of extensive discovery and argument carried out over a period of nearly one year.  Although ultimate ownership by the Valmore Trust or Imedinvest was heavily contested, both the Redmond Group and the Zeltser Group agreed that FIL and GTHL own FII and LR12, respectively.

The instant appeals stem from the Bankruptcy Court's order entered January 20, 2012, a Memorandum Opinion Granting Summary Judgment ("*Judgment*") [ECF No. 443, Bk. Case No.11-17047; ECF No. 369, Bk. Case No. 11-17061] in favor of the Redmond Group and against the Zeltser Group on the issue of ownership of the above captioned alleged debtors.  In the Judgment, Judge Cristol ruled that FIL and GTHL (and, consequently, their subsidiaries, FII and LR12) are owned by the trustee of Valmore Trust. *Id.*

Four days later, on January 24, 2012, the Zeltser Group, on behalf of FII and LR12, filed a timely Notice of Appeal [Bk. Case No.11-17047 ECF No. 455; Bk. Case No. 11-17061 ECF No. 369] from the Judgment.[4]  Thereafter, Areal, JWL, and Visisys Grosvenor Holding[5] filed

---

[4] Other Notices of Appeal from the Judgment were timely filed by the Petitioning Creditors [Case No. 11-17047 ECF No. 466; Case No. 11-17061, ECF No. 393], and GTHL and FIL. [Bk. Case No. 11-17047 ECF No. 468; Case No. 11-17061 ECF No. 395].  Counsel for JWL, Mr. Fishkin, signed the notice of appeal on behalf of GTHL and FIL.  Alleged counsel for FIL, GTHL, and Imedinvest, Moshe Popack, has allegedly interposed an appeal on behalf of Visisys Grosvenor Holding.  Counsel for the Petitioning Creditors, Craig Pugatch, has interposed an appeal both on behalf of the Petitioning Creditors and on behalf of Imedinvest's alleged partner, Areal Group.

Notices of Appeal [Bk. Case No. 11-17047 ECF Nos. 486, 488, and 490; Bk. Case No. 11-17061 ECF Nos. 413, 416, and 419] from the Judgment on February 7, 2012.  Those appeals were dismissed [ECF Nos. 494, 495, and 496, Bk. Case No. 11-17047; ECF Nos. 424, 425, and 432, Bk. Case No. 11-17061], and ultimately reinstated [Bk. Case No. 11-17047-AJC ECF Nos. 528, 530, 531; Bk. Case No. 11-17061-AJC ECF No. 458].   As noted earlier, the lawyer filing JWL's appeal, Alexander Fishkin, is co-counsel with the Zeltser Group in various pieces of pre-existing litigation in New York, in which ownership of LR12 is contested (*See*, for example Bk. Case No. 11-17047-AJC ECF No. 150 at pp. 1-2 of the New York Order, referring to Zeltser, Fishkin and Bruce Katz, jointly as "counsel of record" in the underlying New York Proceeding involving LR12); Craig Pugatch is counsel for the Petitioning Creditors (Fishkin and Pugatch referred to collectively herein as "***Appellants' Counsel***").

It is elemental that the Redmond Group's and the Zeltser Group's authority to act in these proceedings derives from authorizations granted successively by the entities making up the chain of FII's and LR12's ultimate ownership and control – ending, in the case of the Zeltser Group, at Imedinvest and its partners, and, in the case of the Redmond Group, at the Valmore Trust. Accordingly, throughout the bankruptcy proceedings below, the Zeltser Group necessarily represented the ownership and control rights and the interests in these proceedings of all the entities in the alleged chain of ownership from Imedinvest and its partners through FII and LR12, since , absent an unbroken chain of authorizations given by these entities, lawyers the Zeltser Group could not legitimately make appearances for FII or LR12 themselves.  Apparently content to rely on the Zeltser Group's representation of their interests, neither Areal nor JWL sought to

---

[5] A separate Motion to Dismiss will be filed against Visisys Grosvenor Holding's appeal, but the background and argument in this Motion are incorporated in that Motion, by reference.

directly intervene in the underlying bankruptcy proceedings, despite knowledge of the same
They are, thus, not "aggrieved persons," and therefore they have no appellate standing, and this
appeal should be dismissed.

### C. Areal and JWL were aware of the instant proceedings, and both were adequately represented throughout by the Zeltser Group.

JWL, an alleged subsidiary of Imedinvest, and Areal its alleged partner, were aware of
the instant proceedings through counsel and designated representatives, had ample opportunity to
intervene, and failed to do so despite over nine months of intense litigation in the Bankruptcy
Court.  Indeed, the Zeltser Group's advocacy for Imedinvest ownership and control of the chain
of entities ending with FII and LR12 has been the only basis for the Zeltser Group's appearance
in these proceedings.  Further, the Zeltser Group appealed the Judgment declaring the Valmore
Trust (and not Imedinvest) owner of these entities. [*See* Case No. 12-cv-20939-KMW (Fisher
Island Investments, Inc.) and 12-cv-20969-KMW (Little Rest Twelve, Inc.)].   Given the nature
of that Judgment (i.e. establishing only the chain of ownership of FII and LR12), the Zeltser
Group's appeals filed nominally on behalf of FII and LR12 can only reasonably be on behalf of
those entities which the Zeltser Group alleges to be FII's and LR12's immediate and ultimate
owners.

This is consistent with the Zeltser Group's advocacy throughout for Imedinvest's
ownership of JWL, FIL, GTHL and, consequently, of FII and LR12.  Thus, even in its appeal,
the Zeltser Group is acting to represent the interests of Imedinvest, its partners, including Areal
and its alleged subsidiaries including JWL. In presenting its case before the Bankruptcy Court,
the Zeltser Group argued that Imedinvest was owned by its partners (which include Areal), and
that Imedinvest owned JWL, which owned FIL and GTHL, which were the respective owners of
FII and LR12.  In making this argument, eliciting the testimony and documentation of alleged

Imedinvest principals, functionaries and affiliates, the Zeltser Group advocated at length on behalf of Imedinvest's alleged interests and those of its alleged partners and subsidiaries and continues to do so in its appeals filed on behalf of FII and LR12.

Further, Appellants' counsel has been fully aware of this representation through serving as counsel for the Petitioning Creditors (in the case of Mr. Pugatch who purports to represent Areal) and as the Zeltser Group's co-counsel in the state court proceedings (in the case of Mr. Fishkin who purports to represent JWL). Mr. Fishkin's claims of JWL's lack of notice or opportunity to oppose judgment in the bankruptcy court are wholly disingenuous. The interests of his purported client, JWL have been vigorously represented throughout by the Zeltser Group and Fishkin himself has had evident knowledge of this contest. The same is true for Mr. Pugatch's alleged client, Areal, which is alleged to be a partner of Imedinvest.

At the first hearing in Bankruptcy Court, Emanuel Zeltser claimed numerous times that he represented both FII and LR12 and their parent entities FIL and GTHL. Mr. Zeltser stated to the Court that he was the only counsel in the room that had represented FII and LR12 **and their owners** since their inception, "all over the world." *See* Bk. Hr'g. Tr. 3/25/11 at pp. 15:22-16:6. He stressed that state courts could not resolve the ownership issue and that the Bankruptcy Court could resolve the ownership issue in four or five days:

> Your Honor's decision will be dispositive, and I believe, therefore, Your Honor, it's not a very difficult thing. We can have an ownership hearing, a couple of days, three days, four days, you know, it doesn't have to go for a year, okay.
>
> They will put on their evidence, we'll put on our evidence, and in three days the issue of ownership will be resolved. Five days, it will be resolved. It will never be resolved in State Court, and that's the reason those actions should be stayed because they are unable to resolve that. Certainly, that issue should be resolved here because it's not even being resolved in State Court.   *Id.* at p. 61:13-24.

Thus, from the beginning, Mr. Zeltser, self-proclaimed representative of the owners of FII and LR12 since their inception, invited trial on ownership within the Bankruptcy Court, in which he would put on evidence and argue on behalf of those entities which he claimed to be the owners of FII and LR12, which included JWL and Imedinvest and its partners.

JWL was directly aware of these proceedings because the Redmond Group served a subpoena on JWL for deposition in the FII bankruptcy.   Despite being properly served with a subpoena for deposition, JWL failed to appear for its deposition on September 22, 2011.  *See* Bk. Case No 11-17047 ECF No. 235; Bk. Case No. 11-17047 ECF No. 251; *see also* Certificate of Non-Appearance filed by the Redmond Group [Bk. Case No. 11-17047 ECF No. 370].  Based on its non-appearance, JWL was precluded from giving any testimony in the ownership dispute pending in the Bankruptcy Court.   [Bk. Case No. 11-17047 ECF No. 254.]   JWL cannot disregard the bankruptcy court's subpoena power when it does not suit it, and thereafter seek appellate relief on the ultimate issue from the District Court.

In arguing the Zeltser Group's position on the ownership of FII and LR12, in a statement to James Feltman, the Chapter 11 Examiner appointed in this case, Brett M. Amron, Esq., then co-counsel within the Zeltser Group, stated that, "…as of January 7, 2008, Baker and his trust company, Miselva [the former trustee of the Valmore Trust], had absolutely no interest in Fisher Island Limited, Euro Properties, or FIII [sic].  As of that date, those companies and all their assets were owned (and are still owned) by Imedinvest Partners…"  [Bk. Case No. 11-17047-ACJ ECF No. 428 at Exhibit 11, p. 8.] Consistent with these statements, the Zeltser Group has advocated throughout the bankruptcy proceedings on behalf of Imedinvest's ownership of JWL, FIL and GTHL and of these entities' respective ownership of FII and LR12.

The Zeltser Group also argued Imedinvest's position on FII's ownership in response to the Redmond Group's Emergency Motion to Strike the Zeltser Group's Answer to the involuntary Chapter 11 petitions. [Bk. Case No. 11-17047-AJC ECF No. 11].   In its Response to the Motion to Strike, the Zeltser Group attached its Response in Opposition to a Motion for Summary Judgment filed by the Redmond Group on behalf of FII in the Dade County Action (the Dade County Action was removed as an adversary case in Bk. Case No. 11-17047-AJC – Adv. Case No. 11-1886-AJC). [Bk. Case No. 11-17047-AJC ECF No. 25].   That response referenced the Declaration of Emanuel Zeltser dated October 27, 2010.  [Bk. Adv. Case No. 11-1886-AJC ECF No. 17-6.]  In that Declaration, Mr. Zeltser argued that Imedinvest owned FII. *Id.* at pp. 2-4.

The Zeltser Group presented this same Declaration as an exhibit to its response to the Verified Motion for an Order Requiring [the Zeltser Group] to Show Cause Why the [Adversary] Complaint Should Not Be Dismissed and for Sanctions Based on Fraud on the Court. [Bk. Adv. Case No. 11-1886-AJC, ECF No. 17]. In that response, the Zeltser Group, allegedly on behalf of FII, acknowledges that the Bankruptcy Court's Examiner was to "investigate the ownership composition of the alleged Debtors, and investigate who are their actual and duly authorized representatives and attorneys…"   *Id.* at p. 10.   They stated that the ownership trial in the bankruptcy court will, "determine who are the legitimate representatives and attorneys of Fisher Island for purposes of these bankruptcy proceedings." *Id.* at p. 11. The Zeltser Group relied on testimony of Moshe Popack and Emanuel Zeltser regarding Imedinvest's claimed ownership of FII. *Id.* at pp. 14-15 and 16-18.  Specifically, Moshe Popack (Joseph Kay's nephew who, as discussed herein testified in these proceedings that he is counsel for FIL, GTHL, and Imedinvest and all of Imedinvest's "subsidiary companies") stated, "Fisher Island Investments, Inc., Euro

11

Properties Investments III, S.A., and Fisher Island Limited have all, from their respective inceptions, belonged and belong to Imedinvest Partners, directly or through its multiple wholly owned subsidiaries." *Id.* at 16, citing [Adv. Case No. 11-1886-AJC ECF No. 17-5, Declaration of Moshe Popack dated April 21, 2011].

Moshe Popack, who has appeared in these proceedings as the alleged representative of FII and LR12 pursuant to Bankruptcy Rule 7030(b)(6) on behalf of the Zeltser Group, claimed to be counsel for Imedinvest (of which JWL is allegedly a subsidiary and in which Areal is allegedly a partner) and all its "subsidiary companies" and claimed to be counsel for and a director of GTHL and FIL. *See* Bk. Case No. 11-17047-AJC ECF No. 428 at Exhibit 8, Appendix 38 at 8/10/11 Vol. 1, pp. 15:24-16:2; 51:3-5; 8/11/11 at Vol. I at pp.  20:3-9; 25:22-26:4; 59:5-7; and 61:6-10.  Further, Moshe Popack, who has filed another appeal on behalf of Visisys, testified that Imedinvest has always been the sole shareholder of JWL *See* Bk. Case No. 11-17047 ECF No. 428 at Exhibit 8, Appendix 38 at 8/10/11 Vol. 1, pp. 49:18-50:4; 51:3-5.

One of Imedinvest's purported general partners, Baruch Goldstein, was produced by the Zeltser Group for deposition in these actions.[6]  Mr. Goldstein testified that Imedinvest owns FIL, GTHL, and JWL.  [Bk. Case No. 11-17047-AJC ECF No. 428 at Exhibit 8, Appendix 3, pp. 82:15-83:4; 114:8:11; 152:24-25].   He also testified as to the other supposed partners in Imedinvest and his continuing contact with them, including Theodore "Ted" Kretschmer who is the "authorized representative" of Areal.  *Id.* at p. 150:10 – 151:12; *see also* Bk. Case No. 11-

---

[6] Assuming *arguendo* that Imedinvest does exist, per its alleged organizing documents, it would be represented by its partners.

17047-AJC ECF No. 428 at Exhibit 19. Another purported partner of Imedinvest, Olga Timofeyeva, was interviewed by the Examiner as part of his investigation.[7]

Ted Kretschmer is an alleged partner of Imedinvest, the purported representative of Areal, and the person who allegedly assigned the Promissory Note on which the Petitioning Creditors base some of their claims. The Redmond Group served him with a Subpoena on July 1, 2011 for his deposition on July 20, 2011 via email, pursuant to the Zeltser Group's instructions. [Bk. Case No. 11-17047-AJC ECF No. 227-3; Bk. Case No. 11-17047-AJC ECF No. 139]. Mr. Kretschmer did not appear for his deposition, and accordingly, the Redmond Group moved to compel his attendance at deposition. [Bk. Case No. 11-17047-AJC ECF No. 223 at pp. 8-9]. Judge Cristol granted the Motion to Compel from the bench, which was memorialized via an order of September 27, 2011. [Bk. Case No. 11-17047-AJC ECF No. 254]. After the Court's bench-order on the Motion to Compel, the Redmond Group again served a subpoena on Mr. Kretschmer via email on September 21, 2011. [Case No. 11-17047-AJC ECF No. 237.] Mr. Kretschmer responded to counsel for the Redmond Group on September 22, 2010 regarding the subpoena, but never appeared for his deposition, nor did he move for a protective order in this case, nor did he seek any intervention in this matter on behalf of Areal. It is unquestionable that Areal Group, through its "authorized representative," Mr. Kretschmer knew about the underlying bankruptcy, but actively evaded the district court's subpoena power, and actively avoided participation in the underlying bankruptcy.

Finally, making it clear that the Zeltser Group spoke not only for Imedinvest, but also for its alleged holdings, in a subsequent position paper to the Examiner, the Zeltser Group advocated that JWL owned, "Grosvenor and FIL, the parent companies of Little Rest Twelve and Fisher

---

[7] Despite being properly served with a subpoena, Ms. Timofeyeva failed to appear for her deposition.

Island."  [Bk. Case No. 11-17047-AJC ECF No. 428 at Exhibit 10, p. 12].   Approximately three days after the Examiner issued his report, finding that there was no merit to the Zeltser Group's claims of ownership, the Zeltser Group filed a Motion for Partial Summary Judgment, purportedly on behalf of FII and LR12. That Motion [Case No. 11-17047-AJC ECF No. 340] sought a determination that JWL was the equitable owner of FIL and GTHL, and therefore of FII and LR12.   In that Motion the Zeltser Group specifically argued the ownership claims of the Alleged Debtors. *Id.* at pp. 5, 26-27.

The Zeltser Group has throughout the bankruptcy proceedings consistently advocated for and presented witnesses and testimony in support of Imedinvest's ownership of JWL, JWL's ownership of FIL and GTHL, and FIL's and GTHL's ownership of FII and LR12.   This has occurred in proceedings which, by the Zeltser Group's own statements, are intended to resolve all questions of ownership.

### D.  Represented by the Zeltser Group, neither Areal nor JWL has chosen to intervene.

The Zeltser Group has advocated on behalf of Imedinvest's ownership of FIL and GTHL and of these entities' ownership respectively of FII and LR12.   Areal, an alleged partner of Imedinvest knew that these companies' alleged interests would be affected by the underlying litigation yet it chose not to intervene or seek any relief directly, evidently satisfied that its interests were being effectively advocated by the Zeltser Group.

JWL knew that these companies' alleged interests would be affected by the underlying litigation yet it chose not to intervene or seek any relief directly.  Areal and JWL were evidently satisfied that their interests were being effectively advocated by the Zeltser Group.  They knew from the outset that Judge Cristol intended to make a determination as to FII's and LR12's

ultimate ownership – and in numerous pleadings the Zeltser Group stated that the Court's determination would be "dispositive" of all ownership claims.

Although two of its fellow Imedinvest partners did appear, Areal's authorized agent, Theodore Kretschmer acknowledged receipt of a subpoena for deposition in this case, but took no action.  JWL was aware of these proceedings and did not show up to its deposition, nor did it move for intervention in these proceedings.   Areal and JWL only sought relief in these proceedings after the Judgment adverse to Imedinvest.  Given the evident and close ties between Areal and  JWL and the Zeltser Group in matters directly connected with the present proceedings, and given the direct participation of Imedinvest's alleged counsel in the underlying bankruptcy, and the subpoenas served on them, Areal and JWL cannot reasonably claim to be ignorant of these bankruptcy proceedings and the Zeltser Group's advocacy throughout them to defend Imedinvest's ownership of JWL, FII and LR12 and FIL and GTHL and oppose the Redmond Group's competing claims.  Nor can Areal and JWL reasonably claim to be ignorant of the bankruptcy court's intention to adjudicate the ownership and control of FIL, GTHL, FII and LR12.  Nonetheless, they chose not to intervene directly in the proceedings throughout the nearly one year course of events preceding the judgment they now seek to appeal.

## II.   MEMORANDUM OF LAW

### A.  Areal and JWL Lack Standing to Appeal as "Aggrieved Persons"

As a general rule, a non-party cannot appeal the rulings of a district court.  *Gatreaux v. Chicago Housing Auth.*, 475 F.3d 845 (7th Cir. 2007) *citing Marino v. Ortiz*, 484 U.S. 301, 304 (1988).   There is an exception to this general rule when a representative party of the non-party chooses not to appeal. *Marino, id.*, *see also EEOC v. West La. Health Services, Inc.*, 959 F.2d 1277 (5th Cir. 1992) (finding an exception to general rule applies where representative party

does not appeal judgment).  In this case, unlike in *EEOC*, the Zeltser Group, as the representative party of Areal and JWL has initiated appeals.

Only a "person aggrieved" by a bankruptcy court's order has standing to appeal that order.  *In re Westwood Comm. Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002).  The "person aggrieved" test is a limitation on appellate standing in order to avoid endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.  *In re American Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir. 1994) *quoting Holmes v. Silver Sings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989).

A "person aggrieved" is a person that has a **direct** and **substantial** interest in the question being appealed.  *Westwood* at 1335.  The bankruptcy court's aggrieved person doctrine restricts standing even more than Article III standing because it allows a person to appeal only when they are directly and adversely affected pecuniarily by the order being appealed; the order must i) diminish their property; ii) increase their burdens; or iii) impair their rights.  *Id.*  However, as noted by the Court in *Westwood*, the person aggrieved standard is only one of the hurdles that a person must overcome to have standing to appeal – the other procedural requirements include attendance at bankruptcy hearings and intervention.  *Id.* at 1338 n. 8.

If a party fails to appear at a hearing or object to a proceeding, it cannot expect or implore the bankruptcy court to address the issues raised by the proceeding for a second time, unless the objecting party did not receive proper notice of the proceedings and of his opportunity to object to the proposed action.  *In re Ray*, 597 F.3d 871, 874 (7th Cir. 2010).  Here, Areal and JWL had notice of the underlying bankruptcy via, at least, the notices served on them for depositions, but actively avoided participating directly in it.  The *Ray* court noted that appearance and notice requirements serve an important purpose to ensure that the parties present the court with all

16

evidence and legal authorities that may aid the court in its decision. *Id.* at 876. Areal's and JWL's failure to enter an appearance in bankruptcy court weighs against their standing to appeal the Judgment. *Id.*at 876-77. Courts have consistently noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context to advance the swift and efficient administration of an estate. *Id.* at 874.

In the case of *In re Thompson*, 965 F.2d 1136 (1st Cir. 1992), the First Circuit examined the effect of a non-party's failure to intervene in an adversary case on that party's standing to appeal the bankruptcy court's order. The Court found that the non-party had no standing to appeal. The Court noted that intervention in the underlying proceeding under Rule 7024 was necessary for the appellants to have standing to challenge an adverse judgment.[8] In support of this, the *Thompson* Court cited *Karcher v. May,* 484 U.S. 72, 77 (1987), "while '[o]ne who is not an original party to a lawsuit may of course become a party by intervention, substitution or third-party practice, ... we have consistently applied the rule that one who is not a party or has not been treated as a party to a judgment has no right to appeal." *Thompson* at 1141. The *Thompson* court further and cited *Sandra Cotton, Inc. v. Bank of New York,* 87 B.R. 272, 274 (W.D.N.Y.1988), "[w]ithout first having sought to intervene in the [bankruptcy court, appellant] can not now be granted standing to appear on the appeal." *Thompson*, *id.*

In rejecting an argument that the appellants had obtained a *de facto* intervention, the Court, *quoting In re Central Ice Cream Co*. 62 B.R. 357, 360 (N.D. Ill. 1986) stated that an interested party had taken part in the underlying proceedings and had the right to intervene, but who had not formally done so, was not capable of appealing, because the party was not, "on the record as an intervenor, and not being a party to the record has no standing to appeal."

---

[8] This bankruptcy is a contested involuntary petition, and therefore Bankruptcy Rule 7024 is applicable pursuant Rule 1018.

*Thompson* at 1142.  There is no question that Areal and JWL had notice of these proceedings, had their interests represented throughout by the Zeltser Group, and had subpoenas served on them in these bankruptcies (which they ignored).

"A putative intervenor under Rule 7024 must submit a **timely** motion to intervene in the underlying proceeding, demonstrate a direct and substantial interest which would be impaired were intervention not permitted, and establish that its **interest was not adequately represented by exiting parties**" (**emphasis added**). *Id.*  In examining whether intervention would be granted to a putative intervenor, the Court stated, "The "person aggrieved" standard substantially replicates the procedural requisites for intervention under Bankruptcy Rules 2018 and 7024, with a view to determining whether a *nonparty* appellant, whose interests were likely not represented by existing parties, and who may not have been afforded prior notice, could have demonstrated so significant an unrepresented interest as to require intervention" (*emphasis in original*).  *Id.* at 1142, n. 9.  The Court noted that the burden of demonstrating inadequate representation remains on the putative intervenor, and it is at its most onerous where an existing party is under a legal obligation to represent the interests asserted by the putative intervenor – the putative intervenor would have to make a  "compelling showing" of inadequate representation, which is a "heavy burden." *Id.* at 1142.

Here, the Zeltser Group represented and has confirmed throughout the underlying proceeding that it represents FII and LR12, FIL and GTHL as respectively FII's and LR12's owners, and Imedinvest and its partners as FIL's and GTHL's owner, allegedly via JWL.  Thus, even if Areal and JWL had sought intervention of right pursuant to Rule 24(a) (which they have not), they would have needed to overcome the presumption of adequacy that attaches to the Zeltser Group's representation of all the entities in the chain of ultimate ownership of FII and

LR12.  To do so, Areal and JWL would be obligated to put forth concrete facts showing: 1) the existing representation of its interests was inhibited by the personal interests of the existing representative; 2) the existing representative and the opposing party are engaged in collusive activities; or 3) the existing representative has failed or refused to fulfill the fiduciary duty to protect the interests of the putative intervenor.  *Id.* at 1143.  Applying this very analysis, the *Thompson* court found that the appellants failed to demonstrate lack of adequate representation, were consequently not entitled to intervene in the underlying proceeding, and thus lacked appellate standing to challenge the Bankruptcy Court's order. The First Circuit dismissed the appeal.

In sum, JWL and Areal lack standing to appeal as "aggrieved persons" despite any loss they may allege to have sustained as a result of the Judgment, since both were adequately represented throughout by the Zeltser Group, and neither chose to intervene or participate directly despite evident knowledge of the proceedings and the ownership matters at stake therein.

**B.  Areal and JWL Lack Standing Based on the Shareholder Standing Doctrine.**

As set forth above, Areal and JWL have blatantly ignored this Court's subpoena power over them, and have not attempted to intervene in the underlying action.  To the extent that Areal and JWL allege that they are aggrieved due to some alleged up-the-corporate-chain ownership interest in the Alleged Debtors, such interests that they assert are derivative interests, and barred by the shareholder standing doctrine.

The shareholder standing doctrine generally prohibits shareholders from initiating actions to enforce the rights of the corporation, unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment.  *In re Troutman Enterprises, Inc.*, 286 F.3d 359, 364-65 (6th Cir. 2002); *see also In re Anchorage Nautical*

*Tours, Inc.,* 145 B.R. 637 (B.A.P. 9th Cir. 1992) (holding that sole shareholder of a corporation had no standing to appeal a judgment against the corporation, and citing *In re Central Ice Cream Co.,* 62 B.R. 357 (N.D. Ill. 1986) for the proposition that shareholders are not persons aggrieved by a bankruptcy court order approving a settlement, because they have no immediate right to any surplus funds that the corporation would receive).  The Zeltser Group has already taken an appeal from the Bankruptcy Court's Judgment, and therefore, Areal and JWL, to the extent they claim an interest in FII and LR12 as a partner or shareholder of entities purporting to own the Alleged Debtors, are barred from appeal by the shareholder standing doctrine

## II.  <u>CONCLUSION</u>

For the foregoing reasons, the Redmond Group respectfully requests that this Honorable Court dismiss the appeals filed by Areal and JWL *with prejudice* and grant FII and LR12 any and all other relief this Honorable Court deems just and proper.

Dated**:** May 14, 2012.

Respectfully submitted,

*/s/ Patricia A. Redmond*

PATRICIA A REDMOND
Florida Bar No. 303739
predmond@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-2600
*Counsel for Respondents and Alleged Debtors,
Fisher Island Investments, Inc., Mutual Benefits
Offshore Fund, Ltd., and Little Rest Twelve, Inc.*

-and-

*/s /Joseph L. Rebak*_____
JOSEPH L. REBAK
Florida Bar No.: 308668
jlr@tewlaw.com
**TEW CARDENAS LLP**
Four Seasons – 15th Floor
1441 Brickell Avenue
Miami, Florida 33131-4336
Telephone: (305) 536-1112
Facsimile: (305) 536-1116
*Counsel for Respondents and Alleged Debtor,*
*Fisher Island Investments, Inc.*

### CERTIFICATE OF SERVICE

I CERTIFY that on May 14, 2012, I electronically filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record or parties of interest identified on the Service List attached hereto, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Patricia A. Redmond*_____
PATRICIA A REDMOND

## SERVICE LIST

**Via Notices of Electronic Filing through the Court's CM/ECF system:
1:12-cv-20939-KMW Notice has been electronically mailed to:**

Alexander Fishkin afishkin@bk.ru.com

Clayton D. Hackney chackney@dlclegal.com, 41672@mail.ru, dperry@dlclegal.com

Craig Pugatch capugatch.ecf@rprslaw.com

Darin Anthony DiBello ddibello@dlclegal.com, dperry@dlclegal.com

Eun K. Chang echang.ecf@rprslaw.com

George Leo Zinkler, III gzinkler@rprslaw.com

Joseph Lester Rebak jlr@tewlaw.com, eguzman@tewlaw.com, jsk@tewlaw.com, np@tewlaw.com

Moshe L. Popack  moshepopack@yandex.com

Patricia Ann Redmond predmond@stearnsweaver.com, jrivera@stearnsweaver.com, mmesones-mori@stearnsweaver.com, rross@stearnsweaver.com

Stewart Mark Mirmelli mirmellilaw@gmail.com, bkatz225@gmail.com


MIAMI:566567.1