UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

_____

U.S. DISTRICT COURT CONSOLIDATED CASE NO. 12-cv-20939 KMW
Appeal from U.S. Bankruptcy Court Case Nos. 11-17047-AJC
11-17061-AJC

_____

IN RE: FISHER ISLAND INVESTMENTS, INC.; and
LITTLE REST TWELVE, INC.

_____

**ANSWER BRIEF OF APPELLEES FISHER ISLAND INVESTMENTS, INC. AND
LITTLE REST TWELVE, INC.**

**TABLE OF CONTENTS**

PAGE(s)

Table of Authorities ................................................................................................ iii

Standard of Review ...................................................................................................1

Preliminary Statement ..............................................................................................1

Summary of Appellants' Argument ..........................................................................5

Argument ...................................................................................................................5

    A.   The Procedural Objections Raised By Appellants Are Severally And Collectively Meritless And All Must Be Rejected. ...............................................................5

        1.   The bankruptcy court gave more than adequate notice of its intent to resolve the dispute as to the ownership of FII and LR12 in favor of the Redmond Group. .........5

        2.   The bankruptcy court's *sua sponte* summary judgment order was procedurally proper and did not prevent the Zeltser Group from introducing evidence. ................8

        3.   The bankruptcy court did not err in rejecting the Zeltser Group's joinder argument .8

        4.   The bankruptcy court did not err in resolving the ownership dispute as a contested matter ...................................................................................................10

        5.   The bankruptcy court did not impermissibly rely on the Examiner's Report in granting the Redmond Group summary judgment...................................................10

    B.   Just As Its Procedural Objections, Appellants' Substantive Objections Are Without Merit And Must Be Rejected. ........................................................................11

        1.   The bankruptcy court did not abuse its discretion by granting comity to the Gibraltar judgment ...................................................................................11

        2.   Because the Zeltser Group has failed to identify any admissible record evidence revealing any genuine issues of material fact, the bankruptcy court did not err in granting summary judgment on the ownership issue in favor of the Redmond Group ...................................................................................................14

            a.  The Zeltser Group's contentions that the Valmore Trust is a "sham trust" are precluded by the Gibraltar judgment...............................................15

            b.  The Zeltser Group failed to raise any genuine issues of material fact to contradict the bankruptcy court's conclusion that neither Imedinvest nor any of its alleged partners or affiliated companies owned FII or LR12 ......................19

i

(1) The "course of transaction" argued for by the Zeltser Group fails because the bankruptcy court correctly ruled that its first step failed, and even if it had been legally consummated, it would not have changed the Valmore Trust's ownership ................................................................................................20

(2) The "course of transaction" argued for by the Zeltser Group fails because its second step argued below but not on this appeal is legally impossible .........23

Conclusion ............................................................................................................24

Certificate of Service .........................................................................................25

ii

## TABLE OF CITATIONS

**CASES:**                                                                                      **PAGE(s)**

*Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 13, n.3 (1st Cir. 2010) . ....................................17

*Artistic Entm't., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) ................6

*Atherton v. F.D.I.C.*, 519 U.S. 213, 223-24 (1997) . ......................................................................22

*Banco Industrial de Venezuela C.A., Miami Agency v. De Saad*, 68 So. 3d 895, 898
     (Fla. 2011) .................................................................................................................................23

*Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992) .........................17

*Belize Telecom, Ltd. v. Govt. of Belize*, 528 F.3d 1298, 1303 (11th Cir. 2008) . .................1,11,12

*Burger King Corp. v. Pilgrim's Pride Crop.*, 15 F.3d 166, 169 (11th Cir. 1994) . ........................9

*Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993) .................................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) . ...................................................................6,8

*Covenant Christian Ministries, Inc., v. City of Marietta, Ga.*, 654 F.3d 1231, 1244
     (11th Cir. 2011) .........................................................................................................................24

*Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1256 (11th Cir. 2006) . .........1,12

*Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001) . ......................................15

*Edgar v. MITE Corp.*, 457 U.S. 624, 646 (1982) . ........................................................................22

*Fla. First Nat'l Bank of Jacksonville v. Bagley*, 508 F. Supp. 8, 11 (M.D. Fla. 1980) . ..............17

*Fisher Island Holdings v. Kay*, Case No.: 2010-58413-CA
     (Fla. Cir. Ct. of Miami-Dade Cnty.) . ......................................................................................13

*Globalvest Mgmt. Co. L.P. v. Citibank, N.A.*, 7 Misc.3d 1023(A) at *8 (N.Y. Sup. Ct. 2005) ....22

*Haymond v. Lundy*, 2002 WL 1964336, at *6 (E.D. Pa. Aug. 23, 2002) . ....................................17

*Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895) .......................................................................15,16

*Hinck v. United States*, 550 U.S. 501, 510 n.3 (2007) . ..................................................................9

*In re Abdallah*, 778 F.2d 75, 77 (1st Cir. 1985) .......................................................................10

*In re Delco Oil, Inc.*, 599 F.3d 1255, 1257-58 (11th Cir. 2010) .........................................1

*In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 735 (2d Cir. 1992) ................................16

*Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) . ................................................11,22

*Little Rest Twelve, Inc. v. Zajic*, Index Case No. 650209/2010
   (N.Y. Sup. Ct. Cnty. of N.Y. April 19, 2010) ........................................................................20

*N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) . ...........................11

*Rogers v. Guar. Trust Co. of New York*, 288 U.S. 123, 130-31 (1933) .......................................22

*Schiavo v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) . ..........................................................10

*Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l. Corp.*, 401 F.3d 28, 33
   (2d Cir. 2005) .............................................................................................................................6

*Taylor v. Sturgell*, 553 U.S. 880, 884, 894 & n.8 (2008) .............................................................17

*Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1552 n.6 (11th Cir. 1990) . ..............................16

*Turner Entm't. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1522 (11th Cir. 1994) . .....................15

*United States v. Farr & Co.*, 342 F.2d 383, 386 n.4 (2d Cir. 1965) ............................................23

*United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir. 1996) ................................................12

*VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1112-13 (Del. 2005) . ...23

*Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996) . ............................................22

**AUTHORITIES:**

Fed. R. Bankr. P. 7056. ..................................................................................................................1

Fed. R. Bankr. P. 8002. ..................................................................................................................9

Fed. R. Civ. P. 56(a) . ..................................................................................................................1,14

Fed. R. Civ. P. 56(b) . ....................................................................................................................8

Fed. R. Civ. P. 56(c)(1)(A) . ........................................................................................................15

## STANDARD OF REVIEW

An appellate court reviews *de novo* a bankruptcy court's grant of summary judgment, applying the same legal standard used by the bankruptcy court.  *See In re Delco Oil, Inc.*, 599 F.3d 1255, 1257-58 (11th Cir. 2010); Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56's summary judgment standard applicable in bankruptcy adversary proceedings).   Summary judgment is proper if the pleadings, discovery and disclosure materials on file, and any affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The bankruptcy court afforded comity to the judgment of the Supreme Court of Gibraltar. The decision to afford comity is reviewed only for abuse of discretion.  *See Belize Telecom, Ltd. v. Govt. of Belize*, 528 F.3d 1298, 1303 (11th Cir. 2008); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1256 (11th Cir. 2006).

## PRELIMINARY STATEMENT

Appellees Alleged Debtors, Fisher Island Investments, Inc. ("FII") and Little Rest Twelve, Inc. ("LR12"), as represented by the Redmond Group,[1] submit this Answer Brief in response to the Initial Brief of Appellants Fisher Island Investments, Inc. and Little Rest Twelve, Inc., as purportedly represented by the Zeltser Group,[2] (ECF No. 14).  This Court, in its Order Granting the Motions to Dismiss (the "Prior Order"), (ECF No. 61), discussed in considerable detail the factual and procedural history of this proceeding.  Therefore, to enable this Court to

---

[1] The Redmond Group is represented by Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., through Patricia Redmond; Gusrae Kaplan Nusbaum, PLLC, through Martin Russo; and Hogan Lovells US LLP, through Parker D. Thomson and John F. O'Sullivan.
[2] The Zeltser Group is represented by Sternik & Zeltser, through Emanuel Zeltser; and DiBello Lopez & Castillo, P.A., through Darin DiBello and Felix Lopez.

1

appropriately determine whether the Memorandum Opinion Granting Summary Judgment should be affirmed—as we contend it should—we will limit our presentation of the case below to those elements necessary to that judgment and this Court's review thereof.

Before it could determine the issues raised by the Petitioning Creditors in the bankruptcy proceeding, the bankruptcy court had to determine who owned the Alleged Debtors, the Redmond Group or the Zeltser Group. Both said they did. Only one could be correct. The bankruptcy court had to decide. It did, in its summary judgment order.

The proceeding below started oddly, as this Court noted in the Prior Order, with the Zeltser Group, immediately after the petition being filed, admitting its claims. That would essentially have ended things. Once the Redmond Group entered the fray, one thing was clear to all: The bankruptcy court had to first resolve ownership so the proceeding could proceed, or stop. Emanuel Zeltser phrased this well: "This Court can determine the ownership, but respectfully, Your Honor, this is the only Court that may because this is the ultimate Court of equity. . . . Your Honor's decision will be dispositive . . . ." Bankruptcy Hearing Transcript, March 25, 2011 (DE46 at pp. 60:11-13, 61:13-20).[3]

The decision to first resolve the ownership issue having been reached, the next step was case management. The bankruptcy court told the parties to cooperate and agree on the case management issues, and only bring disagreements to the court. The parties did so, and the court entered, upon joint request of the parties, a Case Management and Scheduling Order, (DE113), and an Amended Case Management and Scheduling Order, (DE115). First the parties addressed what was before the court, a contested matter or an adversary proceeding. They agreed. It was a

---

[3] All record citations to the bankruptcy court docket reference *In re Fisher Island Investments, Inc.*, Case No. 11-17047 (Bankr. S.D. Fla.). "DE" refers to the docket entry number on ECF.

contested matter, as shown by the *title* of each of these stipulated orders, as well as in numerous references in both. *Id.* They then agreed on disclosure deadlines, written discovery deadlines, fact deposition deadlines, and expert report and deposition deadlines. Amended Case Management and Scheduling Order (DE115 at pp. 2-4). On closure of the record, dispositive motions could be filed. *Id.* at 5-6. The court then entered an agreed confirming order, fixing the proceeding's timeline, subject to change by written stipulation of the parties or an appropriate motion and order of the court. *Id.* at 5-7.

Some scheduled depositions occurred. Some did not, with witnesses declining to appear. Following motions to compel, the bankruptcy court ruled that those who did not appear at deposition could not testify at trial. Some document discovery occurred; some did not. The Redmond Group named two experts, one on Gibraltar law and one on United Kingdom transactional law and the requirements of affixation of stamps to effect a transaction. The Zeltser Group named none.

More than a month after the deadline for dispositive motions, but with the consent of the bankruptcy court, the Zeltser Group filed a Motion for Partial Summary Judgment, supported by a memorandum. In accordance with the bankruptcy court's order, the Redmond Group filed a memorandum in opposition.

On December 29, 2011, the court denied the Zeltser Group's motion in its Order Denying Partial Summary Judgment (the "December 29, 2011 Order"). That order reviewed the relevant material issues of fact and of law, and concluded that, contrary to the Zeltser Group's assertions, the Zeltser Group's motion "is not supported by facts or the law." Order Denying Partial Summary Judgment (DE405 at p. 16). Instead, the bankruptcy court found the record appeared

3

to support the Redmond Group's position:  "[T]he Court is inclined to determine as a matter of law that Miselva owns Fisher Island Limited and Grosvenor Trading House Limited."  *Id.*

But this was only an inclination, not a decision.  So the order gave the Zeltser Group 21 days to tell the court why it should *not* follow its inclination.  The record being closed in accordance with the parties' agreed amended case management order, the court told the Zeltser Group to base its response on the record as it was.  The court wrote:

> Before making such determination, the Zeltser Alleged Debtors may file within twenty-one (21) days a legal memorandum, *based on the existing record*, to persuade the Court not to enter summary judgment as indicated.

*Id.* (emphasis added).  The Zeltser Group declined to do so, saying:

> In light of the findings and conclusions which the Court has already made, and the confines imposed by the Court with respect to the memorandum permitted by the Order, FII and LR12 – having taken exception to the Order and to the summary judgment – will rely on the existing record already before the Court.

Notice Pursuant to Court's Directive (DE421 at pp. 1-2).  There was no request to expand the record.

The bankruptcy court then entered the Memorandum Opinion Granting Summary Judgment here appealed from, entering summary judgment for the Redmond Group as to the ownership issue.  Order Granting Summary Judgment (DE443).  In so doing the court incorporated its findings in the December 29, 2011 Order.  The court concluded, as a matter of law:

- The Valmore Trust, through its trustee (currently SP Trustees Gmbh) owns 100% of Fisher Island Limited, which owns 100% of Euro Properties Investments III, S.A., which owns 100% of Fisher Island Investments, Inc., which owns 100% of Fisher Island Holdings, LLC.

- The Valmore Trust, through its trustee (currently SP Trustees Gmbh) owns 100% of Grosvenor Trading House, Limited, which owns 85% of Little Rest

Twelve, Inc. with Jean-Yves Haouzi owning the remaining 15% of Little Rest Twelve, Inc.

*Id.* at 5.

## SUMMARY OF APPELLANTS' ARGUMENT

The Zeltser Group makes a series of procedural and substantive arguments seeking to reverse the summary judgment order as to ownership in favor of the Redmond Group. Procedurally, the Zeltser Group contends the process was insufficient because (1) it had no notice of the bankruptcy court's intent to grant, *sua sponte*, summary judgment in favor of the Redmond Group as to ownership of FII and LR12; (2) it was denied the ability to enter all its evidence in opposition to that proposed order; (3) the bankruptcy court failed to join so-called necessary parties; (4) the ownership dispute was litigated as a contested matter instead of as an adversarial proceeding; and (5) the bankruptcy court erred by, according to the Zeltser Group, relying on the Examiner's Report in entering the summary judgment order. Substantively, the Zeltser Group contends that (1) the bankruptcy court erred in affording comity to the Gibraltar judgment; and (2) there were genuine disputes of material fact that precluded granting summary judgment.

## ARGUMENT

### A. The Procedural Objections Raised By Appellants Are Severally And Collectively Meritless And All Must Be Rejected.

#### 1. The bankruptcy court gave more than adequate notice of its intent to resolve the dispute as to the ownership of FII and LR12 in favor of the Redmond Group.

The Zeltser Group contends that it had no notice that bankruptcy court intended to issue a *sua sponte* summary judgment order resolving the FII/LR12 ownership dispute in favor of the Redmond Group. Appellants' Brief at 7-9. This contention is not consistent with the facts.

5

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). "District courts have discretion to grant summary judgment *sua sponte*, *even without notice* in certain circumstances." *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l. Corp.*, 401 F.3d 28, 33 (2d Cir. 2005) (emphasis added); *Artistic Entm't., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003). In those instances, "care should . . . be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." *Schwan-Stabilo*, 401 F.3d at 33.

In these bankruptcy proceedings, the Zeltser Group encouraged the bankruptcy court to resolve the ownership dispute of the Alleged Debtors, FII and LR12. *See* Bankruptcy Hearing Transcript  (DE46 at p. 60:11-13). That court then ordered the appointment of an examiner whose primary task was to investigate the ownership dispute. Status Conference, April 11, 2011 (DE69 at p. 28:20-23); Order Appointing Examiner (DE55). The bankruptcy court next approved the Amended Case Management and Scheduling Order, co-drafted and agreed to by the Zeltser Group, to resolve, *inter alia*, the ownership dispute. That order set the timeline to close the record and make dispositive motions. The Zeltser Group, out-of-time, moved for summary judgment on the ownership dispute, signaling the ownership issue was ripe for determination. Motion for Partial Summary Judgment (DE340). In its December 29, 2011 Order, the bankruptcy court gave the Zeltser Group both notice of its inclination to grant summary judgment in favor of the Redmond Group and 21 days to file a memorandum to dissuade it from

6

so doing.  Order Denying Partial Summary Judgment (DE405 at p. 16).  The bankruptcy court,

recognizing the record was closed, told the Zeltser Group to base its memorandum on that

*existing* record.  The Zeltser Group declined to accept the invitation.  Nor did it request an

expansion of the record.

The Zeltser Group also contends that the December 29, 2011 Order was somehow

misleading.  In that order, the bankruptcy court wrote:  "Pursuant to FRBP 7056(f), the Court is

inclined to determine as a matter of law that Miselva owns Fisher Island Limited and Grosvenor

Trading House Limited."  *Id.*  The Zeltser Group argues that it was caught unawares that

deciding who owned FIL and GTHL would also resolve who ultimately owned FII and LR12,

two companies FIL and GTHL owned and whose ownership was the issue that had to be decided

first.  *See* Appellants' Brief at 7-8.[4]  The Zeltser Group claims it believed that the culmination of

almost a year of litigation and summary judgment proceedings on the issue of who owned FII

and LR12 was going to be a ruling that did not address who owned FII and LR12.

The thrust of the bankruptcy proceeding almost from inception had been who owned FII

and LR12, the Redmond Group or the Zeltser Group.[5]  All sides agreed that FII and LR12 were

owned directly by FIL and GTHL, respectively.  *E.g.*, Motion for Partial Summary Judgment

---

[4] The Zeltser Group also seems to argue on appeal that it was oblivious to the fact that the bankruptcy court's proposed determination that Miselva owned FIL and GTHL would constitute a ruling in favor of the Redmond Group and/or Miselva's successor as the trustee of the Valmore Trust, SP Trustees Gmbh.  Appellants' Brief at 8.  But the Zeltser Group clearly knew that Miselva had been succeeded as trustee of the Valmore Trust by SP Trustees Gmbh.  In its motion for partial summary judgment, the Zeltser Group said:  "[T]he Redmond Group asserts that Fisher Island and Little Rest Twelve are owned by non-party Valmore and/or a non-party Liechtenstein entity, Miselva Etablissement ("Miselva"), Valmore's alleged trustee."  Motion for Partial Summary Judgment (DE340 at p. 2).  In a footnote to that sentence, the Zeltser Group added:  "According to the Redmond Group, 'SP Trustee Gmbh', an affiliate of 'Swiss Partners', is the successor trustee of the Valmore Trust."  *Id.* at p. 2 n.3.

[5] As this Court is aware, there is a third Alleged Debtor, Mutual Benefit Offshore Fund, Ltd., whose ownership dispute is not a part of this appeal.

(DE340 at p. 9).  Who owned FIL and GTHL was therefore the central issue from the very outset of the case.  The Zeltser Group's feigned ignorance and surprise to the ownership ruling on FII and LR12 is disingenuous and cannot be countenanced.

> **2.  The bankruptcy court's *sua sponte* summary judgment order was procedurally proper and did not prevent the Zeltser Group from introducing evidence.**

The Zeltser Group contends it was denied the opportunity to present all of its record evidence in opposition to summary judgment in favor of the Redmond Group because the bankruptcy court closed the record before issuing its *sua sponte* order.  Appellants' Brief at 9-11.  But the fact is the parties stipulated that dispositive motions would follow closure of the record.  Federal Rule of Civil Procedure 56(b) is to the same effect.  Fed. R. Civ. P. 56(b). The Supreme Court also has made clear that entry of summary judgment is mandated "*after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Here, the Zeltser Group, in moving for summary judgment, accepted that the record was closed.  Further, the Zeltser Group never asked for a stay or leave for additional discovery before entry of the *sua sponte* order, and never suggested to the bankruptcy court what evidence, not in the record, was necessary to dissuade the court from its inclination to rule against the Zeltser Group on the ownership issue.

> **3.  The bankruptcy court did not err in rejecting the Zeltser Group's joinder argument.**

The Zeltser Group contends that the bankruptcy court erred by not joining non-parties to the ownership dispute below.  Appellants' Brief at 14-17.  This contention, too, is meritless.

8

The Zeltser Group argues that "before the Court can make any determination affecting the ownership rights of these non-parties in the Debtors, these indispensable non-parties[6] must be joined in this action." Appellants' Brief at 15. But the Supreme Court has long held that "a party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Hinck v. United States*, 550 U.S. 501, 510 n.3 (2007) (quotation marks omitted). Thus the Zeltser Group cannot contend that the summary judgment order in favor of the Redmond Group must be overturned because it harms or helps someone else. This Court has already considered the interests of some of these non-parties (including FIL and GTHL) in the Prior Order and rejected the joinder argument. The law of the case doctrine precludes a re-litigation of the joinder issue as to them. *See Burger King Corp. v. Pilgrim's Pride Crop.*, 15 F.3d 166, 169 (11th Cir. 1994). To the extent the Zeltser Group argues that the failure to join non-parties harmed itself, the harm was self-induced. The Zeltser Group invited the bankruptcy court to resolve the ownership dispute with the Redmond Group in exactly the way it did.

This Court also has no jurisdiction to consider this argument from the Zeltser Group. The Zeltser Group requested that the bankruptcy court join these same non-parties before it resolved the ownership dispute, but the bankruptcy court denied that motion, in part, because the Zeltser Group had stipulated to the ownership issue being resolved without these non-parties' presence. *See* Bankruptcy Hearing Transcript, Jan. 5, 2012 (DE514 at p.20:1-8). A party has 14 days to appeal an order of a bankruptcy court. Fed. R. Bankr. P. 8002. The Zeltser Group never

---

[6] Those non-parties were Miselva, Andrew Baker, SP Trustees Gmbh, JWL, FIL, GTHL, Jean-Yves Haouzi, Euro Properties Investments III, S.A., and Badri's heirs and/or Inna Gudavadze.

9

appealed that decision. "Untimely notice of appeal deprives the district court of jurisdiction to review the bankruptcy court's order." *In re Abdallah*, 778 F.2d 75, 77 (1st Cir. 1985).

### 4. The bankruptcy court did not err in resolving the ownership dispute as a contested matter.

The Zeltser Group contends that the Redmond Group should have initiated, and the bankruptcy court should have entertained, an adversary proceeding to resolve the ownership dispute instead of addressing that issue as a contested matter. Appellants' Brief at 17-18. But the Zeltser Group in co-authoring the case management orders, joined in *titling* this proceeding a contested matter. In dismissing the appeals of the Petitioning Creditors and the non-party appellants, this Court in its Prior Order has already ruled that the Zeltser Group had waived this issue and that there was "no authority to support the[] argument that the Redmond Group was required to file an adversary proceeding." Order Granting Motions to Dismiss at 33 (ECF No. 61). "Under the law-of-the-case doctrine, the resolution of an issue decided at one stage of a case is binding at later stages of the same case." *Schiavo v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) (alteration omitted).

### 5. The bankruptcy court did not impermissibly rely on the Examiner's Report in granting the Redmond Group summary judgment.

The Zeltser Group contends that the bankruptcy court impermissibly relied on the Examiner's Report in granting the Redmond Group summary judgment. Appellants' Brief at 11-14. But that is not true. The Bankruptcy Court explicitly stated in its summary judgment order that it based its opinion on the "undisputed facts, as stated more particularly in the Court's [December 29, 2011 Order]." Order Granting Summary Judgment (DE443 at p. 5). The summary judgment order never even mentioned the Examiner's Report, much less cited to it. In

the December 29, 2011 Order, the material facts section never mentions the Examiner or his report.   Order Denying Partial Summary Judgment (DE405 at pp. 6-16).   Indeed, the only instance where the December 29, 2011 Order mentioned the Examiner and his report was in setting out the procedural and chronological history of the dispute, *id.* at 5, as did this Court in the procedural history section of the Prior Order.  *See* Order Granting Motions to Dismiss at 7-8 (ECF No. 61).

### B.   Just As Its Procedural Objections, Appellants' Substantive Objections Are Without Merit And Must Be Rejected

The substantive objections of Appellants are directed to the bankruptcy court affording comity to the Gibraltar judgment and the bankruptcy court's determination that, as a matter of law, the Valmore Trust, through its trustee, owns the parents—either directly or indirectly—of the Alleged Debtors, FII and LR12.  The grant of comity is reviewed on an abuse of discretion standard, the summary judgment *de novo*.  We will deal with these objections *seriatim*.

### 1.   The bankruptcy court did not abuse its discretion by granting comity to the Gibraltar judgment.

The Zeltser Group contends that the bankruptcy court erred by granting comity to the Gibraltar judgment.[7]  Appellants' Brief at 27-29.  A court's determination to grant comity to an

---

[7] Although we address the merits of the Zeltser Group's arguments, the Zeltser Group clearly waived these arguments by not presenting them to the bankruptcy court.  "[If] a party hopes to preserve a claim, argument, theory, or defense on appeal, [the party] must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."   *Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) (quotation marks omitted).   The Zeltser Group neither in its motion for partial summary judgment nor elsewhere made any contentions that the Gibraltar judgment was procured by fraud, nor did it identify any of the alleged record "evidence" of fraud it cites here to this Court. Motion for Partial Summary Judgment (DE340); *see N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").   The Petitioning Creditors did raise claims of fraud in the Gibraltar judgment, but that did not negate the Zeltser

11

international judgment is reviewed for an abuse of discretion only.  *See Belize Telecom, Ltd. v. Govt. of Belize*, 528 F.3d 1298, 1303 (11th Cir. 2008) ("This Court also reviews a district court's grant or denial of comity to a foreign judgment for abuse of discretion."); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1256 (11th Cir. 2006).  "A district court abuses its discretion when the court fails to apply the proper legal standard or to follow proper procedures in making its determination."  *Belize Telecom, Ltd.*, 528 F.3d at 1303.  The Zeltser Group has not alleged that the bankruptcy court violated any legal standards or followed improper procedures in making its determination.  *See* Appellants' Brief at 27-29.[8]  Instead, the Zeltser Group contends that the bankruptcy court should not have granted comity to the Gibraltar judgment because it was allegedly procured by fraud.  Appellants' Brief at 28.

To say the least, an allegation that a judgment of a court in a United Kingdom territory was obtained by fraud is a very serious allegation, requiring well-nigh conclusive proof.  Further, as is the case here, where allegations of fraud were put before that foreign court and not credited by that court, that itself should dispose of the claim.  Against these standards, the assertions by the Zeltser Group raise not even a shadow on the integrity of the Gibraltar court.  Therefore, the

---

Group's obligation to raise arguments in support of its case.  *See United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir. 1996) (holding that arguments raised by co-defendants did not count as vicarious objections by a defendant who had not raised the issue below).

[8] The Zeltser Group argues that the bankruptcy court "explicitly declined to disregard the Gibraltar judgment because to do that the Bankruptcy Court ostensibly 'would need to specifically reverse certain findings made by the Gibraltar Court.'"  Appellants' Brief at 27. This is an upside-down mischaracterization of the bankruptcy court's December 29, 2011 Order. The bankruptcy court underwent a thorough analysis of the Gibraltar judgment, then declared that "[f]or the Court *to adopt the Zeltser Alleged Debtors' argument*, it would need to specifically reverse certain findings made by the Gibraltar Court."  Order Denying Partial Summary Judgment (DE405 at pp. 15-16) (emphasis added).  The bankruptcy court declined to reverse the Gibraltar findings because it declined to accept the Zeltser Group's version of facts and because to do so would require overruling a decision that the bankruptcy court had already determined was entitled to comity.

bankruptcy court did not abuse its discretion in disregarding assertions that hearsay and otherwise inadmissible and irrelevant evidence of alleged fraud marred the Gibraltar proceedings. The Zeltser Group points to purported "evidence" that the presiding judge of the Gibraltar judgment ruled against Joseph Kay in exchange for being appointed to higher office. Appellants' Brief at 28 (citing DE369-1 at pp. 17-41). But that "evidence" consisted of alleged transcripts from a Russian TV interviews, not affirmed by legal affidavit or by sworn declaration. (DE369-1 at pp. 17-24). So much for that. Other "evidence" is that of a deponent whose statements of alleged fraud were hearsay, convoluted, and inconclusive. *Id.* at pp. 25-41.[9] The bankruptcy court had discretion to discount or disregard that deponent's testimony:

> A. [Deponent]  [Inna Gudavadze, Badri's wife] said a few days after my — the decision in [Gibraltar,] he [the Gibraltar judge] became a — the — the chief justice, head — head chief justice of Gibraltar. . . .
> . . . .
> Q. How did you understand what she was saying?
> A.  . . . . She told me straight out, she said, you know, I hired a very powerful attorney from — in England and who was able to get me what — the way I understood it, because then I had told her, I said — I said, but —
> Q. How did you understand it?
> A.  That she was — that basically the lawyer that she had gotten was well-enough connected to basically give her — you know, a judgment in her favor.

(DE369-1, pp. 35-36). Not only is this the rawest of hearsay; it is not probative of anything.

The Zeltser Group also alleges one witness, David Aim, was paid to give false testimony in the Gibraltar proceedings. Appellants' Brief at 28. No citation to the record is proffered to

---

[9] That deponent, Yasif "Yaffa" Yakubov, is Joseph Kay's niece and the wife of Moshe Popack, the man who had filed an appellate brief in this Court against the Redmond Group on behalf of "Visisys Grosvenor Holding" and who also claimed, contradictorily to "Visisys'" position in its appeal, to be the attorney and corporate representative for FII and LR12 on behalf of Imedinvest. Yasif "Yaffa" Yakubov Deposition (DE524-6 at pp. 10:24-11:2, 14:2-5). The Redmond Group attorneys have also brought an action in Florida state court against Joseph Kay to evict him and Yakubov from a Fisher Island villa. *Fisher Island Holdings v. Kay*, Case No. 2010-58413-CA (Fla. Cir. Ct. of Miami-Dade Cnty.). Yakubov is an interested witness with questionable motives.

support the contention that Aim was paid to give *false* testimony.  Appellants' Brief at 28. Regardless, the Gibraltar court was well aware of Aim's consulting and contingency fees and already discounted his testimony in rendering its decision.  Gibraltar Judgment (DE379-4 at pp. 22-24) (weighing the "misgivings" about Aim's evidence, Aim's "palpable hatred of Kay," and Aim's potential financial gain against the absence of any logical explanation, other than through Aim, as to how trust assets were funded, because Kay was "unable" to proffer an explanation). Lastly, the Zeltser Group cites to statements from a second witness, Esther Meimoun, who claims she was paid to submit false testimony in the Gibraltar proceedings.  Appellants' Brief at 28 (citing DE369-1 at pp. 49-52).  But that "evidence" was a duplication of documents that were already submitted in the Gibraltar proceedings, (DE369-1 at pp. 49-52), and the Gibraltar court never once cited to nor relied on Meimoun's testimony that she alleged was procured by fraud. Gibraltar Judgment (DE379-4).[10]

> **2. Because the Zeltser Group has failed to identify any admissible record evidence revealing any genuine issues of material fact, the bankruptcy court did not err in granting summary judgment on the ownership issue in favor of the Redmond Group.**

We now turn to the Zeltser Group contention that the bankruptcy court erred in granting summary judgment because there are genuine disputes of material fact as to whether the Valmore Trust was a "sham trust," Appellants' Brief at 22-25, and as to whether there was a transfer of ownership of FIL and GTHL from the Valmore Trust to Imedinvest.  Appellants' Brief at 25-27.[11]  Applying *de novo* review, summary judgment is proper if the pleadings, discovery and

---

[10] The fact that the Gibraltar court refused to consider evidence that had allegedly been procured by fraud evidences the legitimacy of the United Kingdom-based Gibraltar court system.

[11] Appellants' Brief only deals with a transaction by which Miselva, on behalf of the Valmore Trust, transferred FIL and GTHL to JWL.  That was the transaction that inserted JWL into the Valmore Trust as a subsidiary of Miselva.  And since JWL is thereby a subsidiary of Miselva,

disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form."  *Denney v. City of Albany*, 247 F.3d 1172, 1189 n.10 (11th Cir. 2001).  Further, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . ."  Fed. R. Civ. P. 56(c)(1)(A).

### a. The Zeltser Group's contentions that the Valmore Trust is a "sham trust" are precluded by the Gibraltar judgment.

The Zeltser Group's contention that the Valmore Trust is a "sham trust" are precluded by the bankruptcy court's grant of comity to the Gibraltar judgment.  *See Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895).  The Supreme Court has held:

> In view of all the authorities upon the subject, . . . we are satisfied that where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact.

---

that transaction, even if effective (which, as discussed below and as the bankruptcy judge concluded, it was not), would not have changed ownership.  To change ownership, JWL itself would have had to be transferred out of the Valmore Trust.  Appellants so argued below, and we show hereafter that any such purported transaction was legally invalid.  Appellants do not so argue in their Initial Brief, in which case they may have ceased arguing there was such a transfer to Imedinvest.

*Id.*   Contrary to the Zeltser Group's current contentions, the Gibraltar court has already declared that the Valmore Trust was settled in March 2006 by Badri and Joseph Kay with the International Red Cross as the initial beneficiary and Miselva as its trustee.  Gibraltar Judgment at ¶¶ 1-3, 151, 153 (DE379-4 at pp. 5-6, 76, 78).  The Gibraltar court examined a Gibraltar trust, which by its terms is governed by Gibraltar law, Declaration of Trust (DE381-1 at p. 24), and made extensive findings related to it, manifestly treating it as valid.   The bankruptcy court exercised its discretion to afford comity to that judgment and those determinations.  *See Hilton*, 159 U.S. at 202-04; *see also Turner Entm't. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1522 (11th Cir. 1994) (listing the "efficient use of scarce judicial resources" as one of the factors courts should consider in granting comity to foreign judgments).  "[When] the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged . . . ."  *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1552 n.6 (11th Cir. 1990) (quoting *Hilton*, 159 U.S. at 205-06) (emphasis omitted).

The Zeltser Group is also precluded from re-arguing the Gibraltar judgment's findings because "a suit that concerns or determines the ownership, control and administration of a trust and the powers, duties and liabilities of the trustees is either *in rem* or *quasi in rem*."  *Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993); *cf. In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 735 (2d Cir. 1992) (holding that courts have in rem or quasi in rem jurisdiction over non-party beneficiaries of a trust in a class action to seek equitable distribution of the trust res).  That rule has also been adopted in one Florida federal court, which held that an action to "secure title

16

to the Trust's assets so to be able to make distribution to the beneficiaries in accordance with the

terms of the Trust" was a quasi in rem action. *Fla. First Nat'l Bank of Jacksonville v. Bagley*,

508 F. Supp. 8, 11 (M.D. Fla. 1980) (applying Florida law). It is a matter of hornbook law that

parties as well as nonparties are bound to in rem or quasi in rem judgments. *See, e.g.*, *Bankers*

*Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992); *Haymond v. Lundy*, 2002

WL 1964336, at *6 (E.D. Pa. Aug. 23, 2002) ("A court exercising *in rem* jurisdiction determines

the ownership of property even against claims of non-parties to the original judgment."). [12]

---

[12] The Zeltser Group is also bound by the Gibraltar judgment by privity. The Zeltser Group has long claimed that it is the true representative of FII and LR12 and asserts it appears in these proceedings on behalf of those entities. *See, e.g.*, Motion for Partial Summary Judgment (DE340 at p. 1). During the Gibraltar proceedings, FII and LR12 were treated as ultimately wholly owned subsidiaries of Miselva, the trustee for the Valmore Trust through FIL and GTHL. Gibraltar Judgment (DE379-4 at pp. 10, 17-18). Miselva, as trustee, was a party to the Gibraltar proceedings.

The Supreme Court has held that privity, or "substantive legal relationships," is one of six exceptions to the general rule "that one is not bound by a judgment *in personam* in litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Taylor v. Sturgell*, 553 U.S. 880, 884, 894 & n.8 (2008). "[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and the party to the judgment." *Id.* at 894 (listing examples of such legal relationships and citing to Restatement (Second) of Judgments); *see also* Restatement (Second) of Judgments § 59 cmt. e ("When the corporation is the party to the litigation, a controlling owner who participates in the conduct of the litigation ordinarily has full opportunity and adequate incentive to litigate issues commonly affecting him and the corporation. This identity of interest is perhaps most likely when the controlling owner is the parent of a subsidiary corporation, for in that case what is usually involved is a single enterprise organized in multiple legal forms. When the controlling owner is the party to the litigation, his opportunity and incentive to litigate issues commonly affecting him and the corporation is ordinarily sufficient to treat his participation as being on behalf of the corporation as well."). "Corporate parents and subsidiaries are generally considered identical parties for claim preclusion purposes . . . ." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 13 n.3 (1st Cir. 2010). Therefore, as a matter of law, FIL and GTHL, and their companies FII and LR12, were in privity with the trustee, Miselva, a party to the Gibraltar proceedings, and are thus bound by its judgment. In purporting to represent these entities, the Zeltser Group cannot ignore the substantive legal relationship that the entities had to Miselva.

In addition to reliance on the Gibraltar judgment, the Redmond Group produced an expert declaration that states the Valmore Trust was properly formed and is a valid Gibraltar trust. Declaration of Lloyd DeVincenzi at ¶ 5 (DE381-1 at p. 4).  The Zeltser Group provided no expert—not even a rebuttal expert—on this issue.  Relying exclusively on David Ashfield's deposition, the Zeltser Group argues that the "[e]vidence of record demonstrates that the Valmore [Trust] was never treated as, or intended to be a valid 'trust' . . . ."  Appellants' Brief at 22 (citing Ashfield Deposition (DE343-2 at pp. 109-119, 125, 128-29, 135, 150-51)).[13]  But none of the cited testimony raises even an inference that the Valmore Trust was ever treated otherwise than valid.  *See* Ashfield Deposition (DE343-2 at pp. 109-119, 125, 128-29, 135, 150-51) (documenting, primarily, Ashfield's *beliefs* before Badri's death as to who the Valmore Trust's beneficiaries were).  The Zeltser Group argues that Ashfield's deposition shows that "[n]o real conveyance of any asset to Valmore ever took place since there was no intent to transfer ownership . . . [,]" and argues that the trust was created to hide Kay's identity.  Appellants' Brief at 22.  Whether or not the creation of the trust was so intended, as Ashfield had believed, his testimony clearly shows the trust was created, received assets, and operated.  And whatever were Ashfield's beliefs, they were superseded by the Gibraltar court judgment.  It is that judgment which counts.

---

[13] The record citations noted here correspond exactly to the pages cited within the Appellants' Brief.  The page numbers cited in Appellants' Brief refer to the page numbers out of the total pages for all appendices attached to DE343, noted on the bottom left corner of each appendix page.  This Brief uses the actual page numbers associated specifically with DE343-2 to assist the Court in locating these documents.

18

  **b. The Zeltser Group failed to raise any genuine issues of material fact to contradict the bankruptcy court's conclusion that neither Imedinvest nor any of its alleged partners or affiliated companies owned FII or LR12.**

  The Zeltser Group argues that Miselva, as trustee of the Valmore Trust, transferred FIL and GTHL to JWL.  Appellants' Brief at 25-27.  During the bankruptcy proceedings, it argued that almost immediately after this transaction, JWL was transferred to Imedinvest.  Although the first step of this two-step "course of transaction" was certainly intended to occur, it in no way would have modified the ultimate ownership of FIL and GTHL by Miselva.  Further, the transfer was contingent on payment of the United Kingdom stamp taxes required to be paid on transfer of U.K. companies.  The tax was never paid.  As concluded by the bankruptcy court, the transaction was abandoned.  The non-existence of the second step asserted during the bankruptcy proceedings is even simpler to explain.  This purported transaction was an attempt by Fallon Invest & Trade, Inc., which was the protector of the Valmore Trust, to transfer assets of the trust to Imedinvest.  But the protector had no legal power to do so.[14]

---

  [14] Appellees must note that the "course of transaction" is, itself, implausible.  The Zeltser Group says that Joseph Kay and his son orchestrated numerous transactions in the first part of 2008 to transfer assets (including FII and LR12) from the Valmore Trust to Imedinvest.  Initial Position Statement of Zeltser Group (DE338, Exh. 11, at p. 7) (sealed).  But Kay subsequently spent two years litigating in Gibraltar to get control over the Valmore Trust and, in that case, he (1) expressly asserted that FII and LR12 were in the Valmore Trust, and (2) stated under oath that he had never heard of Imedinvest.  *See, e.g.*, Gibraltar Judgment (DE379-4 at pp. 17-18); Kay Gibraltar Testimony of June 17, 2009, at pp. 123:20 – 124:7.

  Distortion and fabrication has been a part of the Kay faction's wheelhouse all along.  The Gibraltar court found that Kay was a "mendacious individual" and "not a witness of truth." *Id.* at 70, 72.  A United Kingdom court found that alleged Badri wills proffered by Kay, Zeltser, and Alexander Fishkin, a notary for some of the documents, were forgeries based on a forensic analysis of Zeltser's laptop computer that showed the alleged wills had been first prepared and then revised multiple times *after* Badri's death.  *See* May 2012 English Judgment (ECF No. 63-1 at pp. 9, 11, 13).  And a New York court questioned the integrity of the Kay faction and its lawyers and disregarded Zeltser's evidence in an LR12 ownership dispute as "lacking in credibility" and "inherent[ly] implausib[le]." Supreme Court of New York Decision at 20-21 (DE150 at pp. 22-23).

19

> (1) *The "course of transaction" argued for by the Zeltser Group fails because the bankruptcy court correctly ruled that its first step failed, and even if it had been legally consummated, it would not have changed the Valmore Trust's ownership.*

Rather than showing the bankruptcy court erred in concluding the purported transfer of FIL and GTHL from Miselva to JWL had been abandoned, the Zeltser Group contends that some parties to the transaction believed the transaction to have been legally effective to some degree. Appellants' Brief at 26.  The sole basis for this is an affidavit from Miselva principal Andrew Baker.[15]  Appellants' Brief at 26 (citing Baker Affidavit (DE343-1 at pp. 1-10)).  Baker testified that Zeltser—whom he then believed to be the lawyer of the Valmore Trust—told him to transfer these assets to JWL, a subsidiary of Miselva, that is, from one Miselva subsidiary to another. Baker Testimony (DE374-1 at pp. 112:1-114:30).[16]   In that same affidavit, Baker clarifies that, while a change of ownership of FII and LR12 would occur by reason of the transfer, the JWL transfer was contingent on the receipt of United Kingdom stamps that both parties on appeal, and Baker, agree were never purchased.  Baker Affidavit (DE343-1 at p. 4); Motion for Partial Summary Judgment (DE340 at pp. 5-6) (recognizing the U.K. stamp taxes had not been paid). Baker states:

> It will be seen from the GTHL Board resolution that the issue of a new share certificate to JWL was subject to the share transfer form being duly stamped in the United Kingdom.  To the best of my knowledge, this has not been done to date and so the registered shareholder of all the shares of GTHL remains as Miselva, although by virtue of the aforementioned stock purchase agreement it holds the shares of GTHL as nominee on [sic] bare trustee for JWL which is thus the sole beneficial owner thereof.

Baker Affidavit (DE343-1 at p. 4).

---

[15] Baker's affidavit was initially filed in *Little Rest Twelve, Inc. v. Zajic*, Index Case No. 650209/2010 (N.Y. Sup. Ct. Cnty. of N.Y. April 19, 2010) (Docket Entry 35).

[16] Because JWL was a Delaware corporation, Baker said the transfer made no sense, but he was willing to do it because it changed ownership not at all.  Baker Deposition (DE343-1 at p. 37-40).

20

The stamp taxes not having been paid, the record establishes that, as a matter of law, the JWL transaction was never completed (or, as the bankruptcy court held, was abandoned).  The board resolution required that the transfer be "duly stamped."  So it is hardly surprising that Baker also testified that "the board of directors of Fisher Island, Limited, at that time did approve the share transfer *subject to* the share transfer document being stamped by Inland Revenue *and that has never happened*."  Baker Testimony (DE374-1 at p. 47:18-25) (emphasis added).  David Ashfield's testimony was to the same effect that the transaction was never completed because of the extraordinary costs of the U.K. stamp taxes.  Ashfield Deposition (DE343-2 at pp. 64-65).  Ashfield also produced records of FIL and GTHL confirming that the JWL transaction was uncompleted and that FIL and GTHL continued to be owned by Miselva, in 2008, a year after the alleged JWL transfer.  Exhibit 30 to Ashfield Deposition (DE375-1 at p. 168) (FIL records) (including notation "Miselva remains unchanged as shareholder as share transfer was not completed"); Exhibit 31 to Ashfield Deposition (DE376-1 at p. 8) (GTHL records) (containing same notation); Motion for Partial Summary Judgment (DE340 at p. 4) (noting that  the JWL transaction occurred in 2007).  There is *no* testimony or evidence to the contrary.

The Redmond Group also provided an expert opinion on whether the JWL transaction was ever completed, by a member of the Bar of England and Wales and one of the authors of Blackstone's Guides to the Companies Act 2006.  Declaration of Elizabeth Weaver at ¶ 1 (DE382-1 at p. 1).  That expert's uncontroverted opinion is that the transfer was *ineffective* because it was never duly stamped.  Baker had made clear the transaction could not be effective because the board required it to be duly stamped.  What Baker or others *believed* was the effect of the uncompleted transaction is not controlling as to the *actual* legal consequences under applicable law.  Weaver showed that because the JWL transaction was never properly stamped,

21

legal title never passed to JWL, but remained in Miselva. *Id.* at ¶¶ 9, 11, p. 5.[17] She concluded

that, at most, beneficial ownership would have passed to JWL. *Id.* But she further found that if

the parties to the JWL transaction treated it as abandoned or discharged—as the uncontroverted

testimony of Ashfield and Baker shows to have been the case—neither legal nor beneficial

ownership would have transferred to JWL. *Id.* at ¶¶ 13-14, p. 6.[18] No other evidence was given

---

[17] For the first time here on appeal, the Zeltser Group has contended that the alleged JWL transfers were exempt from the U.K. stamp duty. *Compare* Appellants' Brief at 26 *with* Motion for Partial Summary Judgment (DE340 at p. 6). It failed to bring the Stamp Tax Manual, upon which it now relies, to the bankruptcy court's attention, even after the court's December 29, 2011 Order requesting arguments and memoranda related to ownership. Notice of Filing (DE524 at p. 13) (Stamp Tax Manual) (dated Mar. 9, 2012). Because the Zeltser Group had not raised these arguments below or presented the manual before the summary judgment order, they are waived. *Juris*, 685 F.3d at 1325; *see also Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996) (holding that a "court was not obliged to consider [a] belatedly submitted affidavit" in support of applying Venezuelan law).

   Even if this Court were to consider this belatedly filed evidence, it changes nothing. The Zeltser Group identified in its late filing two paragraphs relating to Category L exemptions, but both state that an exemption would apply "if given a category L certificate under the Stamp Duty [] Regulations." (DE524-21 at pp. 19-20). Likewise, all references to exemptions under Category A within the manual require certification. *Id.* at 200-01. Because no exemption was ever sought, no certificate could have issued, and no exemption could apply.

[18] The Zeltser Group also argues that New York law rather than the law of the United Kingdom governs any dispute arising under the JWL Share Transfer Agreement, so expert Weaver's opinion on the issue of stamping is irrelevant. Appellants' Brief at 25-26. The Zeltser Group is wrong. An agreement between parties stipulating a choice of law provision cannot nullify those parties' duty to comply with applicable law. The laws of the United Kingdom, and in particular, its stamp tax law, applied because both FIL and GTHL, whose corporate shares were transferred to JWL, are incorporated in the United Kingdom. Exhibit 30 to Ashfield Deposition (DE375-1) (FIL records); Exhibit 31 to Ashfield Deposition (DE376-1) (GTHL records). Thus, as Weaver states, the fact that the transaction claims to be governed by New York law does not affect the legal issue that stamping under the laws of the United Kingdom had to occur to effectuate the JWL transaction. There was no evidence to the contrary. In addition, the internal affairs doctrine, a conflict of laws principle, provides that the internal operating procedures and requirements of a corporation, as well as the relationship among its members, are governed by the law of the situs of the corporation. *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). As Weaver makes clear in her declaration, the United Kingdom recognizes the internal affairs doctrine. Declaration of Elizabeth Weaver at ¶ 8 (DE382-1 at p. 3). New York also recognizes this internal affairs doctrine, *see Globalvest Mgmt. Co. L.P. v. Citibank, N.A.*, 7 Misc.3d 1023(A), at *8 (N.Y. Sup. Ct. 2005), as does Florida, where the involuntary bankruptcy is pending, *see*

to the bankruptcy court on the applicability of this stamp tax.[19]  This ends the first step of the "course of transaction," as the summary judgment order recognized.

>      (2) *The "course of transaction" argued for by the Zeltser Group fails because its second step argued below but not on this appeal is legally impossible.*

The Zeltser Group argued below—but does *not* argue in its Initial Brief—that within days of the transfer of FII and LR12 by Miselva to JWL, Fallon, the Valmore Trust's protector, transferred JWL out of the Valmore Trust and to Imedinvest in January 2008.  Initial Position Statement of Zeltser Group (DE338, Exh. 11, at p. 7) (sealed).  Within days of that alleged transfer, the Zeltser Group contends Imedinvest removed all of the directors of JWL and its subsidiaries; replaced them with the likes of Moshe Popack, Joseph Kay, and his son David Kay; and then had those new directors transfer the JWL assets, like FII and LR12, directly to Imedinvest.  *Id.* at p. 7-8.  If Fallon had not (or could not) transfer JWL to Imedinvest, then none of the asserted subsequent activities could, as a matter of law, have legally occurred.  And the Valmore Trust, directly through Miselva or indirectly through its ownership of JWL, would still own FII and LR12.

---

*Banco Industrial de Venezuela C.A., Miami Agency v. De Saad*, 68 So. 3d 895, 898 (Fla. 2011), and Delaware, where JWL is incorporated, *see VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1112-13 (Del. 2005), as well as the United States Supreme Court, *see Rogers v. Guar. Trust Co. of New York*, 288 U.S. 123, 130-31 (1933); *Atherton v. F.D.I.C.*, 519 U.S. 213, 223-24 (1997).  Because "there is no conflict of laws between the relevant jurisdictions . . . all choice-of-law questions can best be left unresolved."  *United States v. Farr & Co.*, 342 F.2d 383, 386 n.4 (2d Cir. 1965).  Therefore, even under New York law, U.K. law would apply to the stamping issue because of New York's recognition of the internal affairs doctrine.

[19] Only now does the Zeltser Group reference exhibits to Weaver's Declaration to support its claim of exemption.  Appellant's Brief at 34 (citing DE382-1 at p. 115 (example of an empty stamp tax exemption form)).  But as shown, *see supra* note 17, no stamp tax exemption can exist because an exemption is dependent on issuance of a certificate, and none was ever sought.

The Redmond Group has presented uncontroverted evidence that any purported transfer by Fallon was, as a matter of Gibraltar law, impermissible and, thus, ineffective. The Declaration of Trust creating the Valmore Trust grants the protector no affirmative power to accept assets into or alienate away from the Valmore Trust. Declaration of Trust (DE381-1 at pp. 14-38). Instead, the trust documents mainly grant the protector a negative power to veto the discretionary decisions of the trustee. *See, e.g.*, *id.* at pp. 18-19. The terms of the trust thus show Fallon had no power to transfer assets. In addition, the Redmond Group produced an expert who declared that "as a matter of Gibraltar law, Fallon as Protector of the Trust had no legal power to dispose of the shares of JWL. These shares were held by Miselva as Trustee of the Trust and Miselva alone had the power to dispose of them." Declaration of Lloyd DeVincenzi at ¶ 12 (DE381-1 at p. 5). There is no contrary testimony.

This Court may affirm the bankruptcy court's summary judgment order on any basis supported by the record. *Covenant Christian Ministries, Inc., v. City of Marietta, Ga.*, 654 F.3d 1231, 1244 (11th Cir. 2011). Although the bankruptcy court did not reach the second step of the Zeltser Group's "course of transaction," saying the first failed as a matter of law, the second step clearly fails as a matter of law and likewise so does the whole "course of transaction."

## CONCLUSION

The Zeltser Group has not presented a single reversible issue on appeal. Many of its arguments have been waived. All are without foundation. This Court should affirm.

24

Respectfully submitted,

HOGAN LOVELLS, US LLP
Parker D. Thomson, Esq.
Fla. Bar No.:  081225
parker.thomson@hoganlovells.com
John F. O'Sullivan, Esq.
Fla. Bar No.:  143154
john.osullivan@hoganlovells.com
200 S. Biscayne Blvd., 4th Floor
Miami, FL 33131
Telephone:  (305) 459-6500
Facsimile:   (305) 459-6550


By: */s/ John F. O'Sullivan*
JOHN F. O'SULLIVAN
Florida Bar No. 143154
john.osullivan@hoganlovells.com
*Counsel for the Alleged Debtors, FII*

        -and-

STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.
Patricia A. Redmond
Fla. Bar No. 303739
predmond@stearnsweaver.com
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3553
Facsimile:  (305) 789-3395
*Counsel for the Alleged Debtors, FII, LR12 & MBOF*

        -and-

25

GUSRAE KAPLAN NUSBAUM PLLC
Martin P. Russo, Esq.
mrusso@gkblaw.com
120 Wall Street, 11th Floor
New York, NY  10005
Telephone:  (212) 269-1400
Facsimile:    (212) 809-5449
*Admitted Pro Hac Vice*
*Counsel for Alleged Debtors, LR12 & MBOF*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on November 16, 2012, I electronically filed the foregoing document with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel of record or parties of interest identified on the Service List below, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/  John F. O'Sullivan*_____
John F. O'Sullivan

26

<u>**SERVICE LIST**</u>

**Mailing Information for a Case 1:12-cv-20939-KMW**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Eun K. Chang**   for Solby+Westbrae Partners, 19 SHC Corp., Ajna Brands, Inc.,
  601/1700 NBC LLC, Axafina, Inc. and Oxana Adler LLM, Petitioning Creditors
  echang.ecf@rprslaw.com

- **Darin Anthony DiBello**   for Fisher Island Investments, Inc., and Little Rest Twelve,
  Inc., Appellants, Zeltser Group Alleged Debtors
  ddibello@dlclegal.com,dperry@dlclegal.com

- **Clayton D. Hackney**   for Fisher Island Investments, Inc., and Little Rest Twelve, Inc.,
  Appellants, Zeltser Group Alleged Debtors chackney@dlclegal.com,
  dperry@dlclegal.com

- **Stewart Mark Mirmelli** for Fisher Island Limited and Grosvenor Trading House
  Limited, Appellants
  mirmellilaw@gmail.com,bkatz225@gmail.com

- **Noticing Bankruptcy Court**
  CMECF_support@FLSB.uscourts.gov

- **Craig Pugatch** for Solby+Westbrae Partners, 19 SHC Corp., Ajna Brands, Inc.,
  601/1700 NBC LLC, Axafina, Inc. and Oxana Adler LLM, Petitioning Creditors
  capugatch.ecf@rprslaw.com

- **John F. O'Sullivan** for Fisher Island Investments, Inc., Appellee, Redmond Group
  Alleged Debtor
  john.osullivan@hoganlovells.com,elena.rodriguez@hoganlovells.com,
  olga.garcia@hoganlovells.com

- **Patricia Ann Redmond** for Fisher Island Investments, Inc., and Little Rest Twelve, Inc.,
  Appellees, Redmond Group Alleged Debtors
  predmond@stearnsweaver.com,rross@stearnsweaver.com,mmesones-
  mori@stearnsweaver.com,jrivera@stearnsweaver.com

- **George Leo Zinkler , III**  for Solby+Westbrae Partners, 19 SHC Corp., Ajna Brands,
  Inc., 601/1700 NBC LLC, Axafina, Inc. and Oxana Adler LLM, Petitioning Creditors
  gzinkler@rprslaw.com

- **Martin P. Russo** for Fisher Island Investments, Inc., and Little Rest Twelve, Inc.,
  Appellees, Redmond Group Alleged Debtors
  mrusso@gkblaw.com

27

Gusrae Kaplan Bruno & Nusbaum
120 Wall Street, 11 Floor
New York, NY   10005

**Manual Notice List**

The following is the list of parties who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

- **Emanuel Zeltser** for Fisher Island Investments, Inc., and Little Rest Twelve, Inc., Appellants, Zeltser Group Alleged Debtors
  41672@mail.ru

  Sternik & Zeltser
  119 West 72 Street, #229
  New York, NY   10023

- **Bruce D. Katz** for Fisher Island Limited and Grosvenor Trading House Limited, Appellant
  bkatz225@gmail.com

  Bruce D. Katz and Associates
  160 Broadway, #908
  New York, NY   10038

- **Alexander Fishkin** for Fisher Island Limited and Grosvenor Trading House Limited, Appellants; JWL Entertainment, Inc., non-party
  afishkin@bk.ru
-
  Alexander Fishkin Attorney at Law, P.C.
  366 Amsterdam Avenue, #176
  New York, NY   10024

- **Moshe L. Popack** for Fisher Island Limited and Grosvenor Trading House Limited, Appellants; Visisys Grosvenor Holdings, non-party
  moshepopack@yandex.com

  Moshe L. Popack
  2413 Fisher Island Drive
  Fisher Island, FL   33109