**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

_____

**U.S. DISTRICT COURT CONSOLIDATED CASE NO.  12-cv-20939 KMW**


**Appeal from U.S. Bankruptcy Court Case Nos. 11-17047-AJC**
**11-17061-AJC**

_____


**IN RE: FISHER ISLAND INVESTMENTS, INC.; and**
**LITTLE REST TWELVE, INC.**

_____


**REPLY BRIEF OF APPELLANTS,**
**FISHER ISLAND INVESTMENTS, INC.,**
**and LITTLE REST TWELVE, INC.**

_____


DiBello, Lopez & Castillo, P.A.
Attorneys for Appellants
    Fisher Island Investments, Inc., and
    Little Rest Twelve, Inc.
1550 Madruga Avenue, Suite 504
Coral Gables, Florida 33146
Telephone:  (305) 668-8870
Facsimile:   (305) 668-8892

Darin A. DiBello, Esq.
Florida Bar No. 957615
Felix J. Lopez, Esq.
Florida Bar No. 0827142

CONSOLIDATED CASE NO.  12-cv-20939 KMW

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

ARGUMENT .......................................................................................... 1

A.    The bankruptcy court did not give adequate notice of its intent to resolve the dispute as to the ownership of FII and LR12 in favor of the Redmond Group. ............................................................................................. 1

B.    The Bankruptcy Court erred in rejecting the Appellants' joinder argument. .................... 3

C.    The Bankruptcy Court erred in resolving the ownership dispute as a contested matter. ................................................................................ 6

D.    The bankruptcy court impermissibly relied on the Examiner's Report in granting the Redmond Group summary judgment. ............................. 9

E.    The Bankruptcy Court abused its discretion by granting comity to the Gibraltar judgment. ................................................................... 11

F.    Appellants identified admissible record evidence revealing genuine issues of material fact; which preclude the Bankruptcy Court from granting summary judgment on the ownership. ............................................. 14

G.    The JWL Transfers Were Not Abandoned. .................................... 16

CONCLUSION ...................................................................................... 17

i

CONSOLIDATED CASE NO.  12-cv-20939 KMW

## **TABLE OF AUTHORITIES**

## Cases

*Allman v. Wolfe*,
  592 So.2d 1261 (Fla. 2d DCA 1992) .......................................................... 4

*Bata v. Bata*,
  39 Del. Ch. 258, 163 A.2d 493 (1960) ...................................................... 14

*Belize Telecom, Ltd. v. Govt. of Belize*,
  528 F.3d 1298 (11th Cir. 2008) ................................................................. 11

*Brady v. Andrew (In re Commercial Western Finance Corp.)*,
  761 F.2d 1329 (9th Cir. 1985) .................................................................... 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................... 2

*Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP, LLC*,
  738 F.Supp.2d 840 (N.D. Ill. 2010) .......................................................... 12

*Chaubert v. Bacquie*,
  694 S.2d 805 (Fla. 4th DCA. 1997) .......................................................... 14

*Cross Timbers Oil Co. v. Rosel Energy, Inc.*,
  167 F.R.D. 457 (D. Kan. 1996) .................................................................. 4

*Culpepper v. Irwin Mortg. Corp.*,
  491 F.3d 1260 (11th Cir. 2007) .................................................................. 8

*Davanzo v. Resolute Ins. Co.*,
  346 So.2d 1227 (Fla. 3d DCA 1977) .......................................................... 4

*Elliott Intern. L.P. v. Vitro, S.A.B. de C.V.*,
  95 A.D.3d 565, 945 N.Y.S.2d 1 (1st Dep't 2012) ..................................... 12

*Ellis Sarasota Bank & Trust Co. v. Nevins*,
  409 So. 2d 178 (Fla. 2d DCA 1982) .......................................................... 4

*EM Ltd. v. Republic of Argentina*,
  389 Fed.Appx. 38 (2d Cir. 2010) .............................................................. 12

*FTC v. Affordable Media, LLC*,
  179 F.3d 1231 (9th Cir. 1999) .................................................................. 12

ii

*Gull v. Constam*,
   105 F. Supp. 107 (D. Colo. 1952) ............................................................................. 14

*Havoco of Am., Ltd. v. Hill*,
   197 F.3d 1135 (11th Cir. 1999) ................................................................................. 6

*Hilton v. Guyot*,
   159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895).............................................. 12, 14

*Hunt v. BP Exploration Co. (Libya) Ltd.*,
   580 F. Supp. 304 (N.D. Tex. 1984) ......................................................................... 14

*In re Brooks*,
   217 B.R. 98 (Bankr. D. Conn. 1998) ....................................................................... 12

*In re Haber Oil Co., Inc.*,
   12 F.3d 426 (5th Cir. 1994) ...................................................................................... 7

*In re Lawrence*,
   279 F.3d 1294 (11th Cir. 2002) .............................................................................. 12

*In re McKay,*
   732 F.2d 44 (3d Cir. 1984) ........................................................................................ 7

*In re Portnoy,*
   201 B.R. 685 (Bankr. S.D.N.Y. 1996)..................................................................... 12

*In re Zale Corp.*,
   62 F.3d 746 (5th Cir. 1995) ................................................................................. 7, 8

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982).................................................................................................. 4

*Maersk, Inc. v. Neewra, Inc.*,
   No. 05 Civ. 4356(CM), 2008 WL 1986046 (S.D.N.Y. 2008) ...................... 11, 12, 14

*Massey v. Congress Life Ins. Co.*,
   116 F.3d 1414 (11th Cir. 1997) ................................................................................. 2

*Meyer v. Faust,*
   83 So.2d 847 (Fla. 1955) ........................................................................................... 4

*New Hampshire v. Maine,*
   532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001)........................ 16

*Reinhardt v. Francois*,
   No. 4:05cv107-WS, 2006 WL 5400337, *6 (N.D. Fla. Jan. 31, 2006) .................... 14

DIBELLO, LOPEZ & CASTILLO, P.A.  •  1550 Madruga Avenue • Suite 504 • Coral Gables, FL 33146

*Ritchie v. McMullen*,
    159 U.S. 235, 16 S. Ct. 171, 40 L. Ed. 133 (1895) ............................................... 14

*Robinson v. Tyson Foods, Inc.*,
    595 F.3d 1269 (11th Cir. 2010) ........................................................................ 16

*Royal Bank of Canada v. Trentham Corp.*,
    665 F.2d 515 (5th Cir. 1981) ............................................................................ 14

*Sanchez v. Century Everglades, LLC*,
    946 So.2d 563 (Fla. 3d DCA 2006) .................................................................. 4

*Shelley v. Noffsinger*,
    91 F.R.D. 263 (N.D. Ill. 1981)........................................................................... 5

*U.S. v. Bru*, No. 09–15692,
    2012 WL 3030238, *5 n.6 (11th Cir. Jul. 25, 2012)......................................... 7

*United States v. Jones*,
    29 F.3d 1549 (11th Cir. 1994) ........................................................................ 14

*Warren v. Warren*,
    73 Fla. 764, 75 So. 35 (1917) ..................................................................... 12, 14

*Webster Bus. Credit Corp. v. Henricks Jewelry, Inc.*,
    2008 WL 2222203, *2 (M.D. Fla. 2008) ........................................................... 4

*Westbrook v. Zant*,
    743 F.2d 764 (11th Cir. 1984) .......................................................................... 8

## Other Authorities

Florida Foreign Recognition Statute §55.605 ............................................................. 11

Bankruptcy Court's summary judgment should be reversed upon multiple grounds, the critical being that enumerable issues of material fact exist precluding the possibility of disposition without trial thus depriving the Zeltser Alleged Debtors of their day in court.

## **ARGUMENT**

**A.    The bankruptcy court did not give adequate notice of its intent to resolve the dispute as to the ownership of FII and LR12 in favor of the Redmond Group.**

Appellees contend that the Bankruptcy Court gave adequate notice of its intent to summarily resolve the dispute as to the ownership of FII and LR12, relying upon certain procedural history to support their argument.  Appellees have twisted the facts and taken them completely out of context in an effort to distract the Court's attention from the real issues in this case – whether the Bankruptcy Court erred in permitting the ownership dispute to proceed as a "contested matter" and in *sua sponte* entering the January 20, 2012 Summary Judgment.  There is no question that the Bankruptcy Court erred in doing so and nothing the Appellees rely upon show otherwise.

Appellees rely upon statements made by Appellants' counsel, Emanuel Zeltser[1], at the initial hearing before the Bankruptcy Court on March 25, 2011,when Mr. Zeltser stated that the Bankruptcy Court "is the only Court that may [determine the ownership] because it is the ultimate Court of equity."  Appellees have taken those statements completely out of context. Appellants' counsel's statement was solely in the context of seeking to consolidate all of the state court proceedings so that a single court would adjudicate the dispute, and in an effort to have a trustee appointed as soon as possible to prevent further loss and preserve Appellants' assets.  *See* Transcript of March 25, 2011 Hearing, at p. 60 [Bankr. 17047, DE46]; [Bankr. 17061, DE 40].  The Bankruptcy Court, however, did not grant the requested stay and did not appoint a trustee.  Furthermore, when the state cases were remanded, Mr. Zeltser's statements were no longer applicable. Moreover, those statements were uttered before the ownership issue became the focal all-encompassing issue in the bankruptcy court proceedings, and months before the Bankruptcy Court modified its initial order of April 19, 2011, which did not include the trial

---

[1]     Mr. Zeltser is not a counsel of record on this appeal.

1

on ownership, to the one of November 30, 2011, which specifically included the trial on ownership.

Appellees also rely upon the fact that the Examiner was appointed in the bankruptcy proceedings, suggesting that the ownership dispute resolution was the central issue in the case at that time and that his appointment was made to investigate that issue.  But the ownership dispute was not the central issue at the time the Examiner was appointed.  Rather, the central issues pending at that time dealt with the petitioning creditors' claims and whether the claims were undisputed or disputed.  As such, an ancillary issue arose as to who were the authorized representatives of the Alleged Debtors.  Thus, as reflected in the Order appointing the Examiner, the Examiner was tasked, among others things, to investigate who are the Alleged Debtors' actual and duly authorized representatives.

The Appellees also rely upon the fact that the Bankruptcy Court entered the Amended Case Management and Scheduling Order, co-drafted and agreed to by the Appellants. But the Case Management Order was agreed to only as to the form, the substance was directed by the Court. In addition, it was not until November 30, 2011 that the Bankruptcy Court first specifically directed that the trial on ownership be held.

Even if the ownership dispute had been the central issue in the case from inception, the Bankruptcy Court failed to give Appellants adequate notice that it would *sua sponte* grant summary judgment of the ownership of FII and LR12 in favor of the Redmond Group.

Before granting summary judgment *sua sponte*, a party must be given the opportunity to come forward with all evidence needed to demonstrate the existence of a disputed issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (losing party must be "on notice that she had to come forward with *all* of her evidence"); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417-18 (11th Cir. 1997) (before court can grant summary judgment *sua sponte*, "parties [must] receive adequate notice that they must bring forward all of their evidence").

As Appellees concede, the Bankruptcy Court improperly closed the record before any party could be heard on the contemplated *sua sponte* Summary Judgment.  The record establishes that the Bankruptcy Court not only failed to give Appellants proper notice that they needed to come forward with **all** of their evidence regarding the *current* ownership of FII and LR12 (as opposed to FIL and Grosvenor), but also improperly limited Appellants' ability to contest the intended *sua sponte* summary judgment by expressly stating that the Appellants could

only rely upon the "existing" record.  This was not harmless error.  The Bankruptcy Court did not grant summary judgment *sua sponte* on a purely legal issue, or on an issue as to which the evidence was fully developed.  Although discovery was closed, the issue of "UK stamp duty" was not fully developed.  Appellees had never before argued that the "JWL Transfers" were "abandoned" because a "massive" UK stamp tax was owed and never paid. Appellants could not adequately respond without introducing new evidence – including the UK Stamp Manual - to demonstrate that no stamp duty was owed and thereby debunk Appellees' bogus claim of "abandonment".

Moreover, in its December 29, 2011 Order, the Bankruptcy Court gave notice that the court contemplated *only* holding that nonparties FIL and Grosvenor were owned by Miselva – and did not touch upon ownership of FII and LR12.  The clear implication of the Bankruptcy Court's Order was that it would summarily resolve ownership of FIL and Grosvenor, but that disputed facts as to ownership of FII and LR12 were preserved for trial.  This was made particularly clear when the Bankruptcy Court chided Appellants in its January 11, 2012 Order for even suggesting that there would be any differences between its December 29, 2011 Order and a subsequent Summary Judgment Order. [Bankr. 17047, DE 436]; [Bankr. 17061, DE 363].[2]

Had the Bankruptcy Court advised that it contemplated entering summary judgment as to ownership of the Alleged Debtors themselves (as opposed to the ownership of FIL and Grosvenor), Appellants would have responded by pointing out the many disputed issues of material fact as to their ownership.

Thus, contrary to Appellees' contention, the Bankruptcy Court effectively precluded Appellants from introducing all of its evidence.  Accordingly, the grant of Summary Judgment is procedurally improper.

**B.      The Bankruptcy Court erred in rejecting the Appellants' joinder argument.**

Appellees contend that the Bankruptcy Court did not err in rejecting Appellants' joinder argument.  In support thereof, Appellees argue that Appellants cannot contend that the summary judgment must be overturned because it harms or helps someone else.  Appellees further argue

---

[2]    As an example, the record below contains evidence that ownership of the shares of FII and LR12 were pledged to third parties as security for loans before the entities were placed in the Valmore Trust.  Thus, there were disputed issues of fact as to ownership of FII and LR12 irrespective of any transfers of these entities into and out of the Valmore Trust.

that any harm suffered by Appellants because of the failure to join nonparties was self-induced. Appellees clearly miss the point. Since FIL and Grosvenor were not joined as parties to an adversary proceeding, the Bankruptcy Court's Summary Judgment is fatally defective.

Further, the Bankruptcy Court erred in failing to join indispensable parties; irrespective of whether the summary judgment harms or helps someone else. Every judgment harms or helps someone. Regardless of who it may harm or help, if a judgment is entered without joining all indispensable parties, then it must be vacated for the reasons explained in Appellants' initial brief. The fact that Appellants may have invited the Bankruptcy Court at the beginning of the case to resolve the ownership dispute (a request that was made in connection with failed efforts to consolidated all state cases) does not mean that the court can proceed in doing so without joining all indispensable parties. Further, Appellants' "invitation" to adjudicate ownership was not tantamount to a request to discard all relevant principles governing the adjudication of ownership disputes. Appellants' thwarted efforts to remove and transfer all pending state court actions into a consolidated ownership trial before the Bankruptcy Court does not imply a waiver of due process or joinder requirements. Appellees have not cited a single case in which an ownership trial was permitted to occur without joinder of all individuals and entities asserting ownership claims. And, in fact, the plethora of case law holds that such persons must be joined.

The rule is no different in bankruptcy proceedings. All owners are indispensable parties in any ownership dispute in which their interest is at stake. *See, e.g., Cross Timbers Oil Co. v. Rosel Energy, Inc.*, 167 F.R.D. 457, 460 (D. Kan. 1996) ("when multiple parties claim ownership interests in the same property ... all potential claimants must be joined to provide complete relief and protect the interests of the absent parties"). *See also Davanzo v. Resolute Ins. Co.*, 346 So.2d 1227, 1228 (Fla. 3d DCA 1977) (A defendant is indispensable when, as a result of the litigation, his real property could be foreclosed and taken from him); *Sanchez v. Century Everglades, LLC*, 946 So.2d 563 (Fla. 3d DCA 2006); *Allman v. Wolfe*, 592 So.2d 1261, 1262-63 (Fla. 2d DCA 1992)); *Ellis Sarasota Bank & Trust Co. v. Nevins*, 409 So. 2d 178, 180 (Fla. 2d DCA 1982); *Meyer v. Faust*, 83 So.2d 847, 848 (Fla. 1955) (no order affecting the rights of non-parties in property may be issued absent notice and opportunity to be heard); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim); *Webster Bus. Credit Corp. v. Henricks Jewelry, Inc.*, 2008 WL 2222203, *2 (M.D. Fla. 2008) (under Rule 19,

all claimants to a fund must be joined to determine the disposition of that fund); *Shelley v. Noffsinger*, 91 F.R.D. 263, 266 (N.D. Ill. 1981) (under Rule 19, joint owners of financial accounts are necessary parties to disputes over ownership interests in such accounts).

The prejudice of non-joinder to Appellants became patently clear when Appellants sought to depose Inna Gudavadze below and were denied the right to do so because she is not a named party.   Appellants' inability to obtain discovery from real parties in interest, Inna Gudavadze and her partner Boris Berezovsky (whom the record herein reveals is a convicted felon on Interpol's wanted list) is, by itself, enough to reverse the Bankruptcy Court's Order. *See* Transcript of October 17, 2011 Hearing, at p. 36 [Bankr. 17047, DE 312].[3]

Appellees also contend that this Court has no jurisdiction to consider whether the failure to join the non-parties was in error, because Appellants did not appeal the Bankruptcy Court's denial of Appellants' motion to join indispensible parties.   The Appellees are mistaken for several reasons.   First, the Appellees incorrectly assert that the Zeltser Group requested the bankruptcy court join the non-parties, and that such motion was denied. Rather, the Zeltser Group filed a Motion for Clarification and/or Reconsideration [Bankr. 17047, DE 347; Bankr. 17061, DE 279] with respect to the Bankruptcy Court's *sua sponte* directive to conduct a trial on the issue of ownership of the Alleged Debtors, seeking clarification and/or reconsideration of the Bankruptcy Court's *sua sponte* directive because such trial may not be conducted summarily as a contested matter based on the Redmond Group's motion to strike the Alleged Debtors' answers to the involuntary petitions, and because such trial may not be had in the absence of the alleged owners before the Court.

In the motion, and the declarations filed in support thereof,[4] the Zeltser Group pointed out that it was the Redmond Group who had taken the position that a decision on the issue of ownership could not be had in the absence of the alleged owners of the Alleged Debtors.[5] However, in highlighting the position taken by the Redmond Group, the Zeltser Group did not move the Bankruptcy Court to join such parties, nor did it move to dismiss the complaint for

---

[3]    *See* Affirmation of Emanuel Zeltser, at ¶2, n.1 (DE 69-2); and Appendix, pp. 6-7; 53-58 (DE 69-3).

[4]    S*ee* Declaration of David S. Abramson [Bankr. 17047, DE 357-1; Bankr. 17061, DE 288-1].

[5]    *See* Declaration of David S. Abramson, at ¶3.

failure to join indispensible parties.[6]  Indeed, the Appellees' mistaken contention that this was a motion to dismiss for failure to join an indispensible party only further highlights the underlying problem of the proposed trial of the ownership issue: there were no pleadings to dismiss, because the Appellees failed to bring the ownership claims as an adversary proceeding, with service of a complaint, and an answer and affirmative defenses, as required under the law.  *See infra.*

In any event, even if the Appellants had filed a motion to dismiss for failure to join indispensible parties (which they did not) and such motion was denied by the court, the failure to appeal such order within 14 days would not preclude the Appellants from raising the issue here on appeal, because a bankruptcy court's order denying a motion to dismiss for failure to join indispensible parties is an interlocutory order, and must await a decision on the merits. *Matter of West Coast Computer Services, Inc.*, 6 B.R. 330 (Bankr. M.D. Fla. 1980) (holding that a bankruptcy court's order denying a motion to dismiss for failure to join an indispensable party is a non-final order).[7]

## C.    The Bankruptcy Court erred in resolving the ownership dispute as a contested matter.

For the reasons set forth in Appellants' initial brief, the Bankruptcy Court erred in resolving the ownership disputed as a contested matter, as opposed to an adversary proceeding. *See*, *e.g.*, *Havoco of Am., Ltd. v. Hill*, 197 F.3d 1135 (11th Cir. 1999) (adversary proceeding with joinder of necessary parties is necessary to afford due process rights).  As clearly articulated by the Eleventh Circuit (*id.* at 1139-40), the bankruptcy rules mandating the commencement of an adversary proceeding are not hollow requirements but a necessary predicate to the deprivation of property rights.  Likewise, the Fifth Circuit specifically noted "the difficulties that are apt to arise

---

[6]    Indeed, in their response to the motion (at ¶1) the Redmond Group concedes that, "Although it is not entirely clear what relief this Motion seeks, it appears to seek reconsideration of a trial structure and procedure…" [Bankr. 17047, DE 408; Bankr. 17061, DE 340]

[7]    Moreover, in denying the Zeltser Group's Motion for Clarification and/or Reconsideration, the Bankruptcy Court directed the Redmond Group's counsel to prepare an order (*see* transcript of January 5, 2012 hearing, at p. 20, ll. 9-10 [Bankr. 17047, DE 514; Bankr. 17061, DE 443]).  That order was apparently never prepared by the Redmond Group's counsel, because no order on the motion was ever entered by the Court.  Thus, there was no order from which to appeal.

CONSOLIDATED CASE NO.  12-cv-20939 KMW

if the bankruptcy court too easily permits parties to circumvent the rules governing adversary proceedings." *In re Haber Oil Co., Inc.*, 12 F.3d 426, 440 (5th Cir. 1994).

Appellees claim that the Bankruptcy Court properly resolved the ownership dispute as a contested matter solely because Appellants joined in titling this proceeding a contested matter. Even if Appellants mistakenly titled this proceeding as a contested matter, the Bankruptcy Court still was required to resolve the ownership dispute as an adversary proceeding in order to afford all persons and entities (including indispensable non-parties) due process rights.

Furthermore, it is no moment that the ownership dispute was raised in the context of a motion or was necessary to resolve in order to determine which attorneys were authorized to represent the debtors. An adversary proceeding was nonetheless required to decide ownership. "Including a matter governed by Rule 7001 in another matter already before the court, however, does not satisfy the procedural rules required by Rule 7001." *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) (citing *Brady v. Andrew (In re Commercial Western Finance Corp.)*, 761 F.2d 1329, 1337 (9th Cir. 1985) (A *separate* adversary proceeding is required to invalidate a lien. It cannot be done through the claims allowance process) (requiring party to comply with adversary proceeding requirements rather than dispose of third party's claim in reorganization plan); *In re McKay*, 732 F.2d 44, 48 (3d Cir. 1984) (holding that party cannot merely include Rule 7001 matter in reorganization plan, but must "fil[e] a complaint seeking [resolution of the matter] with the bankruptcy court and serv[e] a copy of it on each [affected] creditor")).  Nor was the adversary proceeding requirement waived.  The scheduling docket was entered while the state actions were still removed in an effort to consolidate them with the bankruptcy proceedings. Thus, most indispensable parties were then present; and others would have been joined.  When the New York state actions were remanded in July 2011, this was no longer true.  "Waiver" is an intentional act; it is the "intentional relinquishment or abandonment of a known right." *U.S. v. Bru*, No. 09–15692, 2012 WL 3030238, *5 n.6 (11th Cir. Jul. 25, 2012) There was no waiver here.  Appellants demanded an adversary proceeding and joinder of necessary and indispensable parties in their motion for reconsideration [Bankr. 17047, DE 347]; [Bankr. 17061, DE 279], filed after the New York cases were remanded and six business days after the Bankruptcy Court on November 21, 2011, scheduled an ownership trial.  A party will be deemed to have "waived their right to protest the lack of an adversary proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue

DIBELLO, LOPEZ & CASTILLO, P.A.  •  1550 Madruga Avenue • Suite 504 • Coral Gables, FL 33146

which they had an opportunity to litigate." *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995).  Here, Appellants were indisputably denied those protections.  Not only was the ownership dispute conducted without requiring joinder of even a single indispensable party, but the Bankruptcy Court even deprived Appellants of the right to obtain discovery from these indispensable parties – specifically because they were not named parties.[8]  Critically, the Bankruptcy Court would not even allow Appellants' counsel to mention Grosvenor during the March 25, 2001 conference because "Grosvenor is not before this Court, and you're wasting our time talking about it." March 25, 2011 Hearing Transcript at p. 62 [Bankr. 17047, DE 46]; [Bankr. 17061, DE 40].[9] Even if Appellants had waived the requirements of service of a summons and complaint required in an adversary proceeding, which they did not, they certainly did not waive any other requirement.

Appellees further contend that this Court has already considered and rejected the joinder argument with regard to some of the non-parties, and therefore Appellants are somehow precluded from "re-ligation of the joinder argument" under the law of the case doctrine. But, Appellees misconstrue the doctrine, which has no application as to the Appellants.

"The law-of-the-case doctrine holds that <u>subsequent courts will be bound by</u> the findings of fact and conclusions of law made by the court of appeals in <u>a prior appeal of the same case</u>." *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260 (11th Cir. 2007) (emphasis added, quotations omitted). The law of the case doctrine "generally operates to preclude a reexamination of issues decided upon appeal, <u>either by the district court on remand or by the appellate court itself upon a subsequent appeal</u>." *Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984) (emphasis added).

_____

[8]   In view of Appellees' refusal to produce Inna Gudavadze for deposition, their argument that Appellants have relied on hearsay testimony concerning her fraudulent procurement of the Gibraltar judgment should be disregarded.

[9]   There is no merit to Appellees' contention that the joinder requirements of Fed.R.Bankr.P. 7019 are exempted from proceedings contesting an involuntary petition under Fed.R.Bankr.P. 1018.  The 2010 Advisory Committee Notes to Rule 1018 explain that the rule was amended to clarify that the "exemption" of the joinder rule applies only to contests over an involuntary petition and not to matters merely "relating to" a contested involuntary petition (i.e., the ownership dispute herein).  "Matters that may arise in a chapter 15 case or an involuntary case, other than contests over the petition itself, are governed by the otherwise applicable rules."  *Id.*

DIBELLO, LOPEZ & CASTILLO, P.A.  •  1550 Madruga Avenue • Suite 504 • Coral Gables, FL 33146

CONSOLIDATED CASE NO.  12-cv-20939 KMW

The doctrine has no application to the instant appeal.  First, it applies only to subsequent proceedings in the trial court on remand or subsequent appeals – not in the same appeal.  Moreover, no appellate court has entered a finding of fact or conclusion of law as to the present Appellants' joinder argument.  Here, multiple appeals have been administratively consolidated under a single appellate case number, and the Court has dismissed several of those appeals.  But, the present Appellants' joinder arguments have never been considered or ruled upon by this Court (indeed, the issue was not even fully briefed until the filing of the instant Reply Brief).  Notably, the Appellees themselves concede that, were the doctrine applicable, it would apply only to re-ligation of the joinder issues "as to them"; *i.e.*, the non-parties who interests were considered and rejected – not as to the instant Appellants.

Moreover, this Court's prior ruling on the issue of joinder was based upon inaccurate facts and misquoted law contained in Appellees' reply briefs to which the Appellants could not respond.  As an example, the "finding" by the Southern District of New York that the bases of removal were "extraordinarily weak" and warranted the imposition of fees, was retracted in a subsequent order after that court was reminded that the sole basis of removal was bankruptcy jurisdiction – leading the court to *sua sponte* reverse its earlier order awarding fees.  (DE 69-4).

**D.     The bankruptcy court impermissibly relied on the Examiner's Report in granting the Redmond Group summary judgment.**

There can be no doubt that the Bankruptcy Court relied upon the Examiner's Report in ruling on the summary judgment.  Appellees do not refute this – stating only that the Order Granting Summary Judgment does not mention the Examiner's Report.  Notwithstanding, the Bankruptcy Court based its summary judgment upon the "undisputed facts" stated more particularly in the Bankruptcy Court's December 29, 2011 order – which relies heavily upon the Examiner Report.  [Bankr. 17047, DE 443]; [Bankr. 17061, DE 369].  The findings contained in the Examiner's Report were the Bankruptcy Court's primary (if not sole) source of information, and reliance on this hearsay was erroneous.  It was equally erroneous for the Examiner and Bankruptcy Court to have relied on the fraudulently-procured Gibraltar judgment, which was issued by a judge in exchange for his promised elevation to Chief Judge (made by former UK Attorney General, Lord Peter Goldsmith) a few days later and who, then acting as Chief Judge, dismissed Joseph Kay's appeal from his decision -- despite being precluded from taking any action on the appeal by Article 61(2)(b) of the Gibraltar Constitution. *See* Transcript of Deposition of Yaffa Yakubov, at pp. 31-32, 36 [Bankr. 17047, DE 524-6], [Bankr. 17061, DE

454-6]; *see also* Declaration of Yaffa Yakubov, at p. 2 [Bankr. 17047, DE 400-1], [Bankr. 17061, DE 334-1].

For example, in its December 29, 2011 order, the Bankruptcy Court noted that the threshold issue to be determined was the ownership and control of the Debtors.  [Bankr. 17047, DE 405]; [Bankr. 17061, DE 338].  The Bankruptcy Court further noted that it had appointed the Examiner to investigate the ownership issue and went to great lengths to describe the Examiner's investigation and conclusions on the threshold issue for the Bankruptcy Court's determination. *Id.*

Among other things, the Bankruptcy Court stated that the parties had produced documents and witnesses to the Examiner.  *Id.*  The Bankruptcy Court also stated that the Examiner had reviewed thousands of pages of documentation as part of his investigation, and had filed a "96 page Report." *Id.*[10]  Notably, the Bankruptcy Court stated that the Examiner had "concluded that the Valmore Trust was the ultimate owner of FII and LR12, and rejected the Zeltser Alleged Debtors Sham Trust Argument" – the very same argument at issue in the summary judgment proceedings.  *Id.*  Moreover, the Bankruptcy Court specifically cited to portions of the Examiner's Report which set forth the Examiner's conclusions and argument rejection.  *Id.*[11]  In addition, the Bankruptcy Court stated that with respect to FII, the Examiner "found that the Zeltser Alleged Debtors had submitted documents that were intentionally submitted in an 'effort to mislead or misrepresent material facts to the Court." *Id.*

It is upon these "undisputed facts" that the Bankruptcy Court then went on to set forth its ruling in the Order Granting Summary Judgment, which is essentially a regurgitation of the Examiner's conclusions and argument rejection.

---

[10]  Judge Cristol had previously advised at the November 21, 2011 hearing that he had thoroughly reviewed the Examiner's Report, although he had not reviewed the thousands of documents referred therein.  *See* Transcript of November 21, 2011 Hearing.  [Bankr. 17047, DE 403]; [Bankr. 17061, DE 336].  Judge Cristol also had commended the Examiner on his diligence, professionalism and excellence in the preparation of the report.  *Id.*

[11]  The Redmond Group had also cited to the Examiner's Report in its memorandum in opposition to the Debtors' motion for partial summary judgment.  [Bankr. 17047, DE 372]; [Bankr. 17061, DE 304].  The Redmond Group's reliance upon the Examiner's Report is so prevalent, as evidenced by the fact that its counsel, Ms. Redmond, represented to the Bankruptcy Court after the report was filed that the Examiner would be her first and perhaps the only witness at trial.  [Bankr. 17047, DE 403]; [Bankr. 17061, DE 336].

DIBELLO, LOPEZ & CASTILLO, P.A.  •  1550 Madruga Avenue • Suite 504 • Coral Gables, FL 33146

CONSOLIDATED CASE NO.  12-cv-20939 KMW

**E.      The Bankruptcy Court abused its discretion by granting comity to the Gibraltar judgment.**

Appellees concede that the Bankruptcy Court relied upon the Gibraltar judgment in arriving to its conclusion regarding the ownership of the Debtors, nonparties Fisher Island Limited and Grosvenor Trading House Limited and their respective subsidiaries.  Appellees contend that the Bankruptcy Court did not abuse its discretion in granting comity to the Gibraltar judgment.  In support thereof, Appellees argue that there was insufficient evidence to establish that the judgment was procured by fraud.  Appellees once again miss the point.

The Bankruptcy Court explicitly declined to disregard the Gibraltar judgment, not because of inadequate evidence that it was procured by fraud, but rather because to do that the Bankruptcy Court ostensibly "would need to specifically reverse certain findings made by the Gibraltar Court".  [Bankr. 17047, DE405; at 15-16]; [Bankr. 17061, DE 338; at 15-16].  Appellants respectfully note that this notion is erroneous.  The Bankruptcy Court erroneously placed the burden on Appellants to demonstrate that comity should be denied, and then deprived Appellants of any opportunity to make any demonstration by granting comity *sua sponte*.  The burden rests on the party seeking preclusion to show that this is an appropriate case for applying the discretionary doctrine of international comity.  *Maersk, Inc. v. Neewra, Inc.*, No. 05 Civ. 4356(CM), 2008 WL 1986046 (S.D.N.Y. 2008).  It was Appellees' burden to raise the issue of comity and to convince the Bankruptcy Court that comity was warranted.[12]  Appellees did not even attempt to meet this burden.

The standard for recognition (or non-recognition) of a foreign judgment is not whether a court must "reverse" findings made by a foreign court (which the court need not do in order to deny comity), but: (1) whether the foreign judgment is applicable to a subsequent proceeding under traditional principles of *res judicata*; (2) whether the foreign judgment may be afforded comity pursuant to well established criteria (including Florida Foreign Recognition Statute §55.605, which was fashioned after federal statute); and (3) whether the foreign judgment is binding against a nonparty to the foreign proceedings, which occurs only in limited circumstances. Each of these inquiries raises disputed issues of material fact: (a) whether any

---

[12]   "A district court abuses its discretion when the court fails to apply the proper legal standard or to follow proper procedures in making its determination." *Belize Telecom, Ltd. v. Gov't. of Belize*, 528 F.3d 1298, 1303 (11th Cir. 2008).

CONSOLIDATED CASE NO.  12-cv-20939 KMW

parties to the Gibraltar proceedings are the same or privies with parties below or their owners and subsidiaries; (b) whether any of the parties to the proceedings below controlled or otherwise participated in the Gibraltar proceedings; (c) whether any of the parties to the proceedings below were within the personal jurisdiction of the Gibraltar court; (d) whether the Gibraltar court adjudicated issues of ownership; (e) whether the Gibraltar court adjudicated validity of the Valmore Trust; (f) whether the Gibraltar court adjudicated ownership of assets by JWL; (f) whether the Gibraltar judgment was procured by fraud and is therefore inadmissible; and (g) whether Gibraltar Judge Anthony Dudley acted contrary to Gibraltar law by sitting both as trial judge and on appeal from his own decision, so as to render the Gibraltar proceedings irregular and its judgment inadmissible.[13]

Fraud is also regarded as a sufficient reason for denying recognition or effect to a judgment rendered by a court of a foreign country. *Hilton v. Guyot*, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895); *Warren v. Warren*, 73 Fla. 764, 75 So. 35 (1917).  By failing to hold Appellees to their burden and granting comity *sua sponte* (and without giving Appellants any opportunity to rebut), the Bankruptcy Court deprived Appellants of the opportunity to

---

[13]  Furthermore, "[c]omity will be granted to the decision or judgment of a foreign court if it is shown that: (1) the foreign court is a court of competent jurisdiction, and that (2) the laws and public policy of the forum state and the rights of its residents will not be violated." *Maersk, Inc.*  Appellants demonstrated that the Gibraltar court lacked jurisdiction to adjudicate ownership in the assets in question because any dispute concerning their transfer was subject to a mandatory forum selection clause requiring resolution in New York courts. *See, e.g., Elliott Intern. L.P. v. Vitro, S.A.B. de C.V.*, 95 A.D.3d 565, 566, 945 N.Y.S.2d 1 (1st Dep't 2012) (declining to accord comity to Mexican court where parties' agreement agreed to the exclusive jurisdiction of New York courts. "It would prejudice plaintiffs for a New York court to ignore the express language of their bargained-for rights"). *Id.*

Appellants also demonstrated that Gibraltar trust law would not be applied to the Valmore Trust because Gibraltar law authorizing Asset Protection Trusts is antithetical to U.S. public policy. *See, e.g., In re Lawrence,* 279 F.3d 1294 (11th Cir. 2002) (foreign trust law concerning validity of Asset Protection Trust offends public policy); *In re Portnoy*, 201 B.R. 685, 700 (Bankr. S.D.N.Y. 1996) (same); *EM Ltd. v. Republic of Argentina*, 389 Fed.Appx. 38, 42 (2d Cir. 2010) (declining to apply Argentine law since it conflicts with public policy); *In re Brooks,* 217 B.R. 98 (Bankr. D. Conn. 1998); *FTC v. Affordable Media, LLC,* 179 F.3d 1231, 1242-1243 (9th Cir. 1999). Even if Gibraltar law does permit the type of trust at issue herein, it is invalid under U.S. law. Where (as here) a trust's Protector is also its Settlor and Beneficiary and has the power to veto and remove the trustee, there is no valid trust under U.S. law. *Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP, LLC*, 738 F.Supp.2d 840 (N.D. Ill. 2010).

demonstrate how the Gibraltar judgment was procured by fraud and should not be afforded comity.  Contrary to Appellees' contention, evidence of record below does in fact demonstrate that at least two witnesses, Esther Meimoun and David Aim, were paid significant sums of money to perjure themselves;[14] and the presiding Gibraltar judge Dudley improperly ruled in favor of Inna Gudavadze in exchange for being appointed the Supreme Justice of Gibraltar (within days after ruling in her favor).[15]  [Bankr. 17047, DE 369-1, at 17-41]; [Bankr. 17061, DE 301-1, at 17-41][Natalia Banenko interview and sworn declaration at pp. 18-19 & Yaffa Yakubov interview and sworn declaration at p.23].  The Gibraltar judgment is critical to Appellees' position, was by and large, the foundation of the Summary Judgment.  Whether or not the Gibraltar judgment was procured by fraud and may not be recognized in the U.S. is clearly a disputed issue of material fact.  If the judgment was obtained by fraud, it is not entitled to comity; and all references to it must be precluded.  The Bankruptcy Court erroneously resolved this disputed factual issue in favor of Appellees summarily; and, moreover, deprived Appellants of the ability to depose the indispensable parties who not only claim to own the disputed assets but who fraudulently procured the Gibraltar judgment.

In addition, the Bankruptcy Court simply failed to address the evidence showing that the Gibraltar judge may have been corruptly influenced to enter judgment in favor of Ms. Gudavadze.  Moreover, Judge Cristol erroneously stated that no copy of the sworn statement,

---

[14]   *See* Affidavit of Esther Meimoun dated June 19, 2008, at ¶8 [Adversary 11-01886, DE 17-3]. Note that at pp. 14-15 of the Memorandum Opinion denying summary judgment (DE 338), Judge Cristol erroneously states that "no copy of her alleged sworn statement, authenticated or unauthenticated, was produced." This is incorrect. It was produced by Fisher Island Investments, Inc. in the Miami-Dade state court proceedings (removed to the Bankruptcy Court), and was also filed as Exhibit 3 to Plaintiff's Response in Opposition to Defendants' Verified Motion for an Order Requiring Plaintiff to Show Cause, Etc. [Adversary 11-01886, DE 17-3] in the adversary proceedings. Moreover, it was also filed at pp. 49-52 of the Appendix to Petitioning Creditors' Response and Memorandum of Law Regarding Alleged Debtors' Motion for Partial Summary Judgment [Bankr. 10741, DE 369-1], [Bankr. 10761, DE 301-1]. *See also* Gibraltar Decision of December 17, 2009 at ¶44 [Adversary 11-01886, DE 5-16].

[15]   *See* Transcript of Deposition of Yaffa Yakubov, at pp. 31-32, 36 [Bankr. 17047, DE 524-6], [Bankr. 17061, DE 454-6]; *see also* Declaration of Yaffa Yakubov, at p. 2 [Bankr. 17047, DE 400-1], [Bankr. 17061, DE 334-1].

"authenticated or unauthenticated", was produced in the litigation, *de facto* resolving a material disputed issue in favor of the Redmond Group.

Additionally, "comity is rarely appropriate where the foreign court issuing the judgment has failed and refused to recognize judgments emanating from United States Courts." *Maersk, Inc. See, e.g., Ritchie v. McMullen*, 159 U.S. 235, 16 S. Ct. 171, 40 L. Ed. 133 (1895); *Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515 (5th Cir. 1981); *Hilton v. Guyot*, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895); *Warren v. Warren*, 73 Fla. 764, 75 So. 35 (1917); *Bata v. Bata*, 39 Del. Ch. 258, 163 A.2d 493 (1960).  *See also, Chaubert v. Bacquie*, 694 S.2d 805 (Fla. 4th DCA. 1997) (granting comity to French judgment based in part upon the conclusion that France recognizes U.S. judgments).  The party who seeks to rely on the foreign judgment has the burden of pleading and proof with respect to the issue of reciprocity.  *Hunt v. BP Exploration Co. (Libya) Ltd.*, 580 F. Supp. 304 (N.D. Tex. 1984); *Gull v. Constam*, 105 F. Supp. 107 (D. Colo. 1952).  Appellees offered no evidence that Gibraltar courts recognize U.S. judgments.  The evidence suggests that they will not; and particularly not in cases involving Asset Protection Trusts, as here.  Futhermore, Appellees even failed to demonstrate that any court in the United States has ever granted comity to a decision issued by a Gibraltar court.

**F.     Appellants identified admissible record evidence revealing genuine issues of material fact; which preclude the Bankruptcy Court from granting summary judgment on the ownership.**

Appellees contend that Appellants are precluded from arguing that the Valmore Trust is a "sham trust" because the Bankruptcy Court granted comity to the Gibraltar judgment.  However, purported "judgments" entered in the Gibraltar proceedings are not binding upon Appellants, which were not parties in the Gibraltar proceedings.  Indeed, neither the "judgments" nor "findings" made by a Gibraltar court are even admissible against nonparties to those proceedings.  Unless *res judicata* or collateral estoppel apply, findings in previous cases are inadmissible hearsay.  *Reinhardt v. Francois*, No. 4:05cv107-WS, 2006 WL 5400337, *6 (N.D. Fla. Jan. 31, 2006) (judicial notice of documents from prior litigation may be taken solely to determine applicability of *res judicata*) (citing *United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir. 1994)).  Even if the Gibraltar judgment were binding against anyone other than the immediate parties thereto, its holding is limited to the conclusion that *Joseph Kay* has no interest in Valmore Trust assets.  This does not preclude any entity whether bound or not bound by the Gibraltar judgment from asserting its own (*as opposed to Joseph Kay's*) ownership interests in

CONSOLIDATED CASE NO. 12-cv-20939 KMW

those assets. Further, said "judgments" in no way operate as *res judicata* or collateral estoppel against Appellants – and are, therefore, inadmissible against Appellants. Among other things, the parties in the Gibraltar proceedings are not the same as the parties in the bankruptcy proceedings. Most notably, Appellees have not, and cannot, establish identity of the parties to the actions or privity between those parties, or identity or the capacity of the persons for or against whom the claim is made. Appellees sidestep those identity requirements, and speciously argue that Appellants are in privity with the parties in the Gibraltar proceedings. But, Appellants were and are not.

As reflected in the purported Gibraltar "judgments", the parties in the Gibraltar proceedings were Miselva Etablissement and Nexus Treuhand AG, as "Claimants," and Inna Gudavadze, Joseph Kay, Iya Patarkatsishvili, Liana Zhmotova, Fallon Invest & Trade Inc., Olga Safanova, and David Patarkatsishvili, as "Defendants." Mr. Kay was sued and appeared in the Gibraltar proceedings only in his individual capacity. None of the parties in the Gibraltar proceedings are parties in the underlying bankruptcy proceedings. Contrary to Appellees' contention, the controlling owners of Appellants were not parties in the Gibraltar proceedings or the bankruptcy proceedings. Thus, the case law cited by Appellees where courts have found privity to exist between a non-party corporation and the controlling owner of said corporation (who was a party in the prior litigation) are inapplicable and inapposite. Furthermore, there has been no showing that anyone other than Joseph Kay received notice of the Gibraltar proceedings, or that Mr. Kay "adequately represented" their interests. Indeed, Appellees concede that Mr. Kay's position in Gibraltar was hostile to the very individuals and entities Appellees now claim to be his privies.

Moreover, contrary to the Appellees' contention, Appellants were under no obligation to present expert testimony to rebut the opinion of Appellees' so-called expert that the Valmore Trust is valid. The record evidence, including testimony of David Ashfield, the Appellees' own "star-witness", shows that the Valmore Trust was never intended to be, and was not, a valid trust. Moreover, the expert declaration relied on by Appellees is so fatally flawed as to require exclusion. Mr. DeVincenzi opines that the Valmore Trust was validly "constituted" for the very same reason it is invalid. Namely at ¶10 of his declaration, Mr. DeVincenzi points out that the Gibraltar Court suspended Fallons' powers as Protector and could not, therefore, fire the trustee. Yet, that did not occur until 2008, two years after the trust was "constituted" with Joseph Kay

serving as Settlor, Protector, and Beneficiary. Mr. DeVincenzi's opinion is clearly contrived and unsupportable.[16]

### G.    The JWL Transfers Were Not Abandoned.

Appellees concede that the transfer of ownership of FIL and Grosvenor to JWL was "intended" to occur but was "abandoned" because the purportedly massive UK stamp tax was never paid.  Yet, Appellees do not deny that no stamp tax was owed.  Nor do Appellees deny that it was the responsibility of Miselva's principal, Andrew Baker, to obtain a "certificate" reflecting that no tax was owed.  Instead, Appellees speciously argue that simply because he did not obtain a certificate, the entire transaction was abandoned.  This is utterly without merit.

The sole basis for the conclusion that the transaction was abandoned was Elizabeth Weaver's opinion that equitable title of FIL and Grosvenor would not have transferred to JWL if the parties treated the transaction as abandoned.  They did not, and there is no evidence to the contrary.  At the very least, this issue is sharply disputed.

Appellees cannot have it both ways.  Appellees successfully argued in the New York LR12 action, and New York Court adopted their position, that JWL owns Grosvenor and therefore Baker was authorized to replace all of Grosvenor's and LR12's officers and directors. [Bankr. 17047, DE 343-1, at 1-10]; [Bankr. 17061, DE 274-1, at 1-10; 17 - 21]. Here, the Appellees argue the opposite, to wit that JWL has never owned Grosvenor because that transaction was ostensibly "abandoned." This Court should not countenance the Redmond Group's eleventh-hour back-pedaling and recharacterization of the facts.

Appellees' flatly contradictory positions at best create a disputed issue of fact as to the transfer of equitable ownership of FIL and Grosvenor.  Further, Appellees' irreconcilably inconsistent positions are also precluded by the doctrine of judicial estoppel.  *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001).

---

[16]   Finally, Appellees claim that Appellants have failed to raise any genuine issues of material fact to contradict the Bankruptcy Court's conclusion that neither Imedinvest nor any of its alleged partners or affiliated companies owned FII or LR12.  Nothing could be further from the truth.  As set forth in detail in Appellants' Initial Brief, there are multiple genuine issues of material fact which preclude the entry of summary judgment.

CONSOLIDATED CASE NO. 12-cv-20939 KMW

## CONCLUSION

The entry of the January 20, 2012 Summary Judgment was not only procedurally deficient under *Fed. R. Bankr. P. 7056(f)*, but was also fundamentally unfair, amounting to a denial of due process. Further, it was improper for the Bankruptcy Court to have considered and relied upon the inadmissible Examiner Report in ruling on the summary judgment. Moreover, it was improper for the Bankruptcy Court to have granted summary judgment on the ownership of the Debtors in the absence of all alleged owners and the Bankruptcy Court erred in adjudicating the ownership dispute as a contested matter. In addition, the January 20, 2012 Summary Judgment should be reversed because all the evidence, when viewed in the light most favorable to the Debtors and resolving all ambiguities and drawing all factual inferences in favor of the Debtors, reveal that there are genuine issues of material fact that must be resolved by the jury.

For all of these reasons, the January 20, 2012 Summary Judgment should be reversed.

By:___s/ Felix J. Lopez_____
        Darin A. DiBello, Esq.
        Florida Bar No. 957615
        E-Mail:     ddibello@dlclegal.com
        Felix J. Lopez, Esq.
        Florida Bar No. 0827142
        E-Mail:     flopez@dlclegal.com
        DiBello, Lopez & Castillo, P.A.
        Attorneys for Appellants
           Fisher Island Investments, Inc., and
         Little Rest Twelve, Inc.
        1550 Madruga Avenue, Suite 504
        Coral Gables, Florida 33146
        Telephone:  (305) 668-8870
        Facsimile:  (305) 668-8892

CONSOLIDATED CASE NO.  12-cv-20939 KMW

## CERTIFICATE OF SERVICE

I CERTIFY that on this   7th   day of December, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/ Felix J. Lopez

DIBELLO, LOPEZ & CASTILLO, P.A.  •  1550 Madruga Avenue • Suite 504 • Coral Gables, FL 33146

<u>**SERVICE LIST**</u>
Consolidated Case No. 12-20939 KMW

<u>**Via Notices of Electronic Filing through the Court's CM/ECF system:**</u>
**1:12-cv-20939-KMW Notice has been electronically mailed to:**

Clayton D. Hackney      chackney@dlclegal.com, 41672@mail.ru, dperry@dlclegal.com

Craig Pugatch      capugatch.ecf@rprslaw.com

Darin Anthony DiBello      ddibello@dlclegal.com, dperry@dlclegal.com

Eun K. Chang      echang.ecf@rprslaw.com

Felix Jose Lopez , III      flopez@dlclegal.com

George Leo Zinkler , III      gzinkler@rprslaw.com

John F. O'Sullivan      john.osullivan@hoganlovells.com, elena.rodriguez@hoganlovells.com, olga.garcia@hoganlovells.com

Martin P. Russo      mrusso@gusraekaplan.com

Moshe L. Popack      moshepopack@yandex.com

Patricia Ann Redmond      predmond@stearnsweaver.com, jrivera@stearnsweaver.com, mmesones-mori@stearnsweaver.com, rross@stearnsweaver.com, sanderson@stearnsweaver.com

Stewart Mark Mirmelli      mirmellilaw@gmail.com, bkatz225@gmail.com

**1:12-cv-21662-KMW Notice has been electronically mailed to:**
Alexander Fishkin      afishkin@bk.ru.com

Felix Jose Lopez , III      flopez@dlclegal.com

Patricia Ann Redmond      predmond@stearnsweaver.com, jrivera@stearnsweaver.com, mmesones-mori@stearnsweaver.com, rross@stearnsweaver.com, sanderson@stearnsweaver.com